F. W. DODGE CORPORATION, Plaintiff, v. FULTZ, Defendant.

Hamilton County Court, Area No. 7.

No. 7-1658. Decided February 25, 1961.

*Mr. Alton C. Banks,* for plaintiff.
*Mr. Robert F. Alsfelder,* for defendant.

For further history see *Omnibus Index* in bound volume.

474

PALMER, J. This is an action by the F. W. Dodge Company a New York corporation, against one Mitchell Fultz for the balance due under a written contract calling for the payment by Fultz of the sum of $220.00 in exchange for the furnishing to him by the Plaintiff of certain information said to be of assistance in the Defendant's construction business. The F. W. Dodge Company, among other enterprises, publishes a periodical bulletin, called a Dodge Bulletin, containing a compilation of information on construction contracts and other items of interest to and of use by the building trade industry. This bulletin is sold to those interested in its services on an annual or, occasionally, semi-annual basis, by salesmen of the Plaintiff who personally contact the trade and who secure their customers' signatures to printed contracts of subscription prepared by the Plaintiff.

On the instant occasion, one Joe Loos, a salesman of Plaintiff, contacted the Defendant, a brick contractor, and talked to him at length about the advantages of Plaintiff's bulletin service. The Defendant testified that he questioned Loos about the cost of this service, and that Loos told him that a year's service cost $220.00, payable one-half in advance, and one-half at the end of six months. Defendant demurred and suggested that he might be willing to subscribe on a straight six months basis at a price of $110.00 in order to see if the service was of value to him. Loos stated that it was the company policy to require a one year subscription, but that it would be "all right to drop it" (i. e. the subscription) after six months without further liability for payment other than the $110.00 initial payment. This was agreed to by defendant.

At this point, Loos produced a printed contract form, containing, in relevant part, the following language:

"The undersigned hereby employs F. W. Dodge Corporation for the term of one year from ............, 19...., to furnish the Dodge Bulletin in the following territory ........ .............., subject, however, to the following conditions.

"1. ..........
"2. ..........
"3. ..........
"4. All conditions and terms are incorporated in the print-

ed (sic) and any written provisions on the front and reverse sides of this agreement. No oral arrangements will be recognized.

(Then followed a two inch space
for, presumably, the insertion
of written conditions or terms)

"In consideration of said service, the undersigned subscriber hereby agrees to pay F. W. Dodge Corporation ................ Dollars per annum, payable in advance in equal semi-annual installments.

Advance Payment of $ ....... attached

Amount Subject to Tax: ..............................

Subscriber ......................................

Signed by ..........................................

Address .........................................."

Loos then filled in various blanks by inserting the date of the transaction, the territory, defendant's name and address, and finally the price and advance payment. Inserted into these latter two blanks were the words "Two Hundred and Twenty and 00/100" (Dollars) and "$110.00," respectively.

Upon seeing this, Defendant protested that Loos had agreed that he could "drop it" after six months, and that he, the Defendant, would not agree to commit himself for the full year price. Loos then stated that he had to fill in the contract this way because the Company required it, but that there would be no question about his right to terminate in six months, and that the Company gave its salesmen latitude in these matters, and would honor his word. The Defendant thereupon signed the contract. On cross-examination, Defendant admitted that he had read all the contract provisions, including paragraph 4.

The Defendant's testimony, heard without objection from Plaintiff, was the sole evidence before the Court relating to the events leading up to and including the execution of the contract. There was no appearance of dissimulation on the Defendant's part, and no inherent incredibility in the recital itself. I accept Defendant's testimony as to what transpired, especially in view of the failure of Plaintiff to produce its employee, Loos, to testify.

Defendant paid Plaintiff $110.00 and accepted the bulletins

for six months, at the end of which time, he telephoned Plaintiff to cancel the service. Plaintiff continued sending the bulletins, however, finally terminating the service in February 1959, and sent Fultz its bill for $110.00. One Richard Gessling, an employee of Plaintiff and its sole witness, testified to a telephone conversation with Defendant in March of 1959, in which Defendant protested the bill and repeated his arrangement with Loos, knowledge of which Gessling denied. Gessling also testified that Plaintiff customarily dealt in one year subscriptions, but did offer special six months' subscriptions, but at 70% of the full price, i. e., $154.00.

Plaintiff urges that Defendant should not be permitted to show an oral arrangement agreed to by Plaintiff's agent varying the terms of a written contract, especially where the Defendant admittedly read the contract, one of whose provisions specifically negatives "oral arrangements." To the extent that this argument addresses itself to the general principle that parol evidence is inadmissible to contradict or vary a written contract, it may be sufficient to point out that the testimony was not objected to. *Eckenroth* v. *Dowd-Feder, Inc.*, 35 Ohio Law Abs., 409. But even treating the matter as one of substantive law which is not waived by a failure to timely object (*Burton* v. *Durkee*, 158 Ohio St., 312), it is nevertheless clear that the parol evidence rule does not preclude a party from showing that a writing which apparently constitutes a contract, was not intended or understood by either party to be binding upon them. *Ohio Ins. Co.* v. *Shotts*, 6 O. Dec. Rep., 813; *Wright* v. *Merchant*, 2 O. Dec. Rep., 742; *Green Cab Co.* v. *Balasco*, 10 Ohio Law Abs., 347; *Morris* v. *Faurot*, 21 Ohio St., 155. Such was the specific import of Defendant's testimony. Neither Defendant nor Loos intended the written contract to be binding on the parties,—or, if Loos intended that it be so binding, then, as pointed out in *Bowman* v. *Rapid Transit Land Co.*, 2 Ohio Law Abs., 583:

"To deny the admission of evidence in such a case would be to allow one of the parties to induce another to enter into the engagement under false representations and to aid him to enforce it against his adversary, notwithstanding the fraud practiced upon him by holding out to him fraudulent inducement."

See also *Drew v. The Christopher Construction Co., Inc.*, 140 Ohio St., 1; *The Central Casualty Co.* v. *Fleming*, 22 Ohio App., 129; *Besser v. Buckeye Pipe Line Co.*, 57 Ohio App., 341, 344; 21 Ohio Jurisprudence 2nd, Evidence, Sec. 631 and 662. Defendant's testimony of these conversations was thus admissible and probative.

A second question inhering in this matter relates to the responsibility of the Plaintiff for the representations, inducements and "oral arrangements" of its agent. Assuming the arrangements actually made to have been unauthorized in fact by Plaintiff, did Defendant have a right to rely thereon, and shall Plaintiff be required to respond thereto?

Plaintiff's position is perhaps best phrased in the following statement:

". . . Following this rule, it is held that one who purchases goods through a sales agent, whose authority is stated in the form contract to be that of soliciting agent only, which further states that the purchaser must see to it that all arrangements pertaining to the order are shown thereon, and that no others will be recognized, cannot enforce against the principal an oral agreement or cancellation made by the agent with reference to the purchaser, for, the limitations of the agent's authority being brought home to the purchaser by the printed order which he signs, he is bound to know and act upon them at his peril, and it is his duty to put into the written order all the terms and conditions agreed upon." Ohio Jurisprudence 2nd, Agency, Sec. 55.

Whatever the merit of this rule as an abstract principle of law (see, 3 Corpus Juris Secundum, Agency, Sec. 236[c]), we take it that it has no application to the instant facts. Obviously, either where the agent's own manifest limitations as a soliciting agent or "travelling salesman," or where the instrument itself unequivocally precludes any variation from printed terms, the buyer is on notice of the agent's want of authority, and perhaps should not be heard to complain of a failure of the principal to observe oral variations promised by the agent.

Here, however, two things will be immediately noted: Plaintiff's agent, Loos, was not a "soliciting agent" or travel-

ling salesman with the inherent limitations of those offices, but rather an agent authorized to sell his principal's property. As such, the rule is well settled that he may be considered, in the absence of notice of limitation, to have had the apparent or ostensible authority to fix the price of the property sold, and Defendant, again in the absence of notice of limitation, had a right to rely on such apparent or ostensible authority. *National Cash Register Co.* v. *Kern*, 30 Ohio Law Abs., 679; 2 Ohio Jurisprudence 2nd, Agency, Sec. 67.

The second point that differentiates this case from the rule urged by Plaintiff, may be found in the nature of the printed contract itself. It is immediately apparent from an examination of the document that considerable latitude is left the agent in determining the terms and conditions of the agreement. Thus, blank spaces were provided for definition of territory coverage, and for price and down payment terms, among others. It is not to be presumed that Plaintiff left these spaces without purpose; it obviously intended its selling agents to fill them in, and obviously anticipated variations and differences in what would be filled in. *Holland* v. *Hatch*, 15 Ohio St., 464. Note in this regard, Gessling's testimony concerning the half-year rates.

This being true, Defendant had a right to accept at its face value Loos' representation as to his authority to make the half-price offer. 2 American Jurisprudence, Agency, Sec. 107. Nor does the paragraph 4 disclaimer modify this right, since it will be observed that the disclaimer itself adverts to "written provisions" which it desires incorporated with the "printed," and, indeed, the printed contract provides considerable space within the form which can only be designed and understood by its reader to provide for the insertion of written terms.

The entire document is pregnant with authority, implied or apparent, of the agent to fix the terms of the contract, and nothing within its contents or in the conduct of the agent, was sufficient to charge defendant with the awareness that his reliance on such authority was misplaced. 2 Ohio Jurisprudence, 2nd, Agency, Sec. 153.

I think it clear that no question could have arisen had Loos written into the printed contract the oral terms agreed between himself and Defendant. If this be true, can the principal suc-

essfully resist such oral terms, negotiated by its agent acting within the scope of his apparent authority, because of the agent's refusal to incorporate them into the writing under the excuse of Company policy? I think not. To so hold would reward artifice and encourage duplicity. We have assumed Plaintiff's want of actual knowledge of its agent's actions here, and may concede its disapprobation thereof. But it is an ancient and wise principle which casts the loss, where one of two innocent persons must suffer by the wrongful act of a third, upon him who put it into the power of the third person to do the injury. *Fullerton* v. *Sturges*, 4 Ohio St., 529. Accordingly, I find for the Defendant.

An Entry may be presented consistent with the foregoing.