*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  05a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

No. 03-4312

SAMUEL GLAZER,

>*Plaintiff-Appellee,*

    *v.*

LEHMAN BROTHERS, INC.,

>*Defendant,*

SG COWEN SECURITIES CORPORATION; SOCIETE
GENERALE,

>*Defendants-Appellants.*

Nos. 03-4312/4415

No. 03-4415

SAMUEL GLAZER,

>*Plaintiff-Appellee,*

    *v.*

LEHMAN BROTHERS, INC.; LEHMAN BROTHERS
HOLDINGS, INC.,

>*Defendants-Appellants,*

SG COWEN SECURITIES CORPORATION,

>*Defendant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00370—John M. Manos, District Judge.

Argued:  October 26, 2004

Decided and Filed:  January 12, 2005

Before:  DAUGHTREY and SUTTON, Circuit Judges; FORESTER, Chief District Judge.[*]

———————————

[*] The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

––––––––––––––––––

## COUNSEL

**ARGUED:** P. Benjamin Duke, COVINGTON & BURLING, New York, New York,  H. Nicholas Berberian, NEAL, GERBER & EISENBERG, Chicago, Illinois, for Appellants.  Robert P. Duvin, DUVIN, CAHN & HUTTON, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  P. Benjamin Duke, Laurence A. Silverman, Aaron R. Marcu, COVINGTON & BURLING, New York, New York,  H. Nicholas Berberian, NEAL, GERBER & EISENBERG, Chicago, Illinois, Douglas V. Bartman, KAHN KLEINMAN, Cleveland, Ohio, Mark O'Neill, WESTON, HURD, FALLON, PAISLEY & HOWLEY, Cleveland, Ohio, for Appellants.  Robert P. Duvin, Kenneth D. Schwartz, DUVIN, CAHN & HUTTON, Cleveland, Ohio, for Appellee.

––––––––––––––––––

## OPINION

––––––––––––––––––

KARL FORESTER, Chief District Judge.  The Defendants-Appellants appeal the District Court's denial of their motion to compel arbitration. The District Court held that the arbitration provisions contained in five agreements between the Plaintiff-Appellee and the Defendants-Appellants were not enforceable because four of those provisions were fraudulently induced, based on oral representations made by a broker who worked for Appellants, and because a fifth agreement was superseded by subsequent criminal conduct and the other four agreements.  We **AFFIRM**, in part, **REVERSE**, in part, and **REMAND** for further proceedings consistent with this opinion.

### OVERVIEW

This appeal asks this Court to again review the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967), and to construe the breadth of the Supreme Court's holding therein.  Specifically, this appeal requires the Court to examine two areas of law, the "severability" of arbitration provisions under *Prima Paint* and the application of the parol evidence rule under Ohio law, as applied to the former.  Although the primary issue presented by the parties concerns the application of the parol evidence rule under Ohio law, the severability issue must first be addressed.

### JURISDICTION

We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. §§ 1331, 1332 and 1367(a).  Further, because the District Court denied the Appellants' motion to stay this action pending arbitration pursuant to section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, we also have jurisdiction under 9 U.S.C. § 16(a)(1)(A).

While a "claim of fraud in the inducement of the *entire contract*" is a matter to be resolved by an arbitrator, "a claim of fraud in the inducement *of the arbitration clause itself* . . . the federal court" has jurisdiction to adjudicate it.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 402-04 (emphasis added).  *See C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir.1990) (stating that if a fraud claim relates to the making of the arbitration provision, the court must first adjudicate the fraud claim).  Because the instant appeal involves allegations that the arbitration provisions at issue were fraudulently induced, the Court has jurisdiction over this appeal.

## BACKGROUND

The Appellee, Samuel Glazer ("Glazer" or "Appellee"), brought this action against Appellants Lehman Brothers, Inc. and affiliated investment companies (the "Lehman Brothers" companies) and Appellants SG Cowen Securities Corp. and Societe Generale (the "SG Cowen" companies) (collectively, the "Appellants")[1] based on the alleged theft of Frank Gruttadauria ("Gruttadauria"), a former employee and broker with the Appellants. Glazer had several investment accounts with the Appellants through Gruttadauria.[2] Gruttadauria engaged in a complex system of fraud and theft as an investment broker during his approximately fifteen years working for the Appellants and has previously pled guilty to criminal charges relating to this wrongdoing.

In 1998, Glazer established investment accounts with the Appellants through Gruttadauria. In doing so, Glazer signed four contracts with SG Cowen: an account agreement, a margin agreement, an option contract, and an account agreement in connection with a prior, 1996 Option Agreement (collectively, the "Account Agreements"). Prior to the creation of those accounts with Gruttadauria, Glazer signed an Option Agreement with SG Cowen through broker David Tissue in 1996 (the "Tissue Account" or the "1996 Option Agreement"). Each of these five agreements contain broad arbitration provisions[3] that are now at issue.

Glazer filed this action in 2002, seeking damages from the Appellants for Gruttadauria's misconduct and theft. Specifically, Glazer brings claims under the Securities and Exchange Act, 15 U.S.C. § 78j(b), other federal securities laws and Ohio state law. The Appellants claim that Glazer's claims should be submitted to arbitration pursuant to arbitration clauses contained in the five agreements.

This is the second time Glazer's claims have been presented to this Court. Previously, his claims were heard with six similar actions in a consolidated appeal, *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386 (6th Cir.2003), after the District Court denied the appellants' motions to stay pending arbitration in those cases. The facts underlying this and other stockbroker fraud cases involving the Appellants and Gruttadauria were set forth in *Fazio*. *Id*. at 391-92.

In the prior appeal, a panel of this Court reversed the District Court's refusal to enforce the various arbitration agreements contained in the investment contracts with the Appellants. *Id*. at 395. The only question presented in that interlocutory appeal was whether similarly worded arbitration clauses in the various plaintiffs' brokerage account agreements mandated arbitration of their claims. *Id*. at 391. Because the panel could not reach the "fact-intensive issues" regarding whether the arbitration clauses were enforceable, it remanded each action for a case-by-case "determination of whether the arbitration clauses, analyzed independently from the account agreements, are valid." *Id*. at 397-98. Thus, this Court specifically remanded with instructions to consider the particular

---

[1] Lehman Brothers purchased the assets and accounts of SG Cowen's Cleveland, Ohio office, including those owned by Glazer, in October 2000.

[2] Under Ohio law, "a fiduciary relationship is 'a relationship in which ... [one reposes] special confidence and trust ... in the integrity and fidelity of another,' thereby creating 'a position of superiority or influence, acquired by virtue of this special trust.'" *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 509 (6th Cir.2003) (citing *Federated Management, Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 854 (Ohio 2000)). In their briefs before this Court, the parties have not disputed that the Defendants, through Gruttadauria, had a fiduciary duty of trust and confidence to the Plaintiff. Accordingly, the Court therefore assumes that the Appellants, through Gruttadauria, owed the Appellee Glazer a fiduciary duty.

[3] The broad arbitration clauses in the Account Agreements provide that "[a]ny controversy arising out of or relating to [Appellee Glazer's] accounts . . shall be settled by arbitration." [J.A. at 811-18] The 1996 Option Agreement contains similar language. [J.A. at 809]

claims of the plaintiffs regarding the validity of the arbitration clauses standing apart from the account agreements as a whole. *Id.* at 392.

Turning to the instant action, upon remand and following a period of discovery, the District Court held an evidentiary hearing on September 3, 2003, pursuant to 9 U.S.C. § 4. Subsequent to the hearing, on October 3, 2003, the District Court issued an Order and Memorandum Opinion that again denied the Appellants' motions to stay pending arbitration. Specifically, the District Court held that: (1) the parol evidence rule did not bar consideration of Gruttadauria's alleged oral promise to Glazer that SG Cowen would not enforce the arbitration provisions; (2) Glazer proved the elements of fraud in the inducement by clear and convincing evidence; and (3) the 1996 account agreement was superseded by Gruttaduaria's subsequent fraud and, therefore, the arbitration provision therein was not binding upon Glazer. [J.A. at 244-261]

In reaching its decision, the District Court held that "the arbitration provisions must be treated as contracts separate and distinct from the broader account agreements." [J.A. at 254] Yet, in reaching this conclusion, the District Court merely adopted Glazer's position without explaining how or why it reached this conclusion; nor did the District Court cite any authority for this legal proposition. Notably, the District Court framed the issue as:

> if an issue arises as to whether the parties intended to be bound by an alleged written contract, parol evidence is admissible to show that despite the writing, the parties did not enter any agreement. . . . [H]owever, if the parties generally intended to be bound by a written agreement, parol evidence is inadmissible to directly contradict one of its terms. The parties essentially dispute which situation is present in the current case.

[J.A. at 254] We find that the District Court properly identified the main issue, but, as discussed *infra*, engaged in an improper application of the appropriate rules.

Relying on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, the District Court held that the "severability doctrine" dictates that the "arbitration provisions must be treated as contracts separate and distinct from the broader account agreements." [J.A. at 254] Thus, the District Court held that parol evidence was admissible to prove that the parties lacked intent to be bound by the "separate" arbitration clause notwithstanding the signed Account Agreements. [J.A. at 254] Based on these legal conclusions, the District Court then found that Glazer proved each element of fraudulent inducement by clear and convincing evidence. [J.A. at 256-260] In addition, the District Court also held that the 1996 Option Agreement did not require arbitration because it was superseded by Gruttadauria's conduct and by the closing of the Tissue account. [J.A. at 260]

Appellants SG Cowen filed a timely Notice of Appeal on October 6, 2003, and Appellants Lehman Brothers timely filed their Notice of Appeal on October 21, 2003.

## LEGAL STANDARD

We review *de novo* the district court's conclusions of law and determination on whether to compel arbitration pursuant to the FAA. *Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483, 487 (6th Cir.2001). A district court's findings of fact are reviewed for clear error. *Great Earth v. Simons*, 288 F.3d 878, 888 (6th Cir.2002). However, it is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, *Fazio v. Lehman Bros., Inc.*, 340 F.3d at 392, because there is a strong presumption in favor of arbitration under the FAA. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir.2003). Additionally, because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred. *Id.*

Before this Court can send a case to arbitration, we must first determine whether a valid agreement to arbitrate exists. 9 U.S.C. § 2; *Fazio v. Lehman Bros., Inc.* 340 F.3d at 393. An arbitration agreement may be voided for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration. *Id.* In making this determination, "ordinary state-law principles that govern the formation of contracts" will apply to this analysis. *Id.* at 394 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Accordingly, the substantive law of Ohio regarding contract formation, interpretation and defenses thereto will be examined.

In this appeal, the Court is called upon, yet again, to examine *Prima Paint* and its application to the validity of arbitration clauses when claims of fraudulent inducement are raised concerning the making of those clauses, as opposed to the entire agreement.  "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir.2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).  Further, where, as in the instant action, the arbitration clause is broad, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont*, 350 F.3d at 577 (quoting *AT & T Techs.*, 475 U.S. at 650).  Of course, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citations omitted).  *See Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004).

## ANALYSIS

### A.      Overview Of The Federal Arbitration Act.

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a plaintiff's cause of action is covered by an arbitration clause, the court must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.  In order to compel arbitration, a court must conduct a hearing, and:

> upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Under this statutory scheme, the district court must make a number of threshold determinations before compelling arbitration:

> [w]hen considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000).  *See also Fazio v. Lehman Brothers*, 340 F.3d at 392-94.

It is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  In addition, the Supreme Court has held that the FAA preempts state law regarding arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984).  State contract law, however, governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses.  *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Great Earth Cos. v. Simons*, 288 F.3d at 889.

In this case, the crux of the District Court's decision was its legal conclusion that the arbitration provisions of the Account Agreements "must be viewed as distinct contracts subject to invalidity independent of the broader account agreements." [J.A. at 254] Based on that finding, the District Court then decided that parol evidence, therefore, was admissible to show fraudulent inducement to be bound by the arbitration provisions.  [J.A. at 254-55] Then, relying on Glazer's oral testimony, the court found, by clear and convincing evidence, that Glazer proved his fraudulent inducement claim and the arbitration provisions could not be enforced.  This appeal followed.[4]

Accordingly, the first issue presented is whether an arbitration clause itself constitutes an independent contract isolated from the agreement in which it is contained or whether such clause should be considered a "separate" contract.  No panel of this Court has yet addressed this narrow question directly and, thus, the issue is one of first impression.

**B.      The District Court Erred By Concluding That The Arbitration Clauses Contained In The Account Agreements Are "Separate And Independent Contracts."**

Section 2 of the FAA, 9 U.S.C. § 2, provides that an arbitration clause "shall be valid, irrevocable, and enforceable *save upon such grounds as exist at law or in equity for the revocation of any contract*."  *Id*. (emphasis added).  The question presented in this appeal is whether this mandate, that an arbitration provision can be invalidated on the same grounds as the revocation of a contract, means that the arbitration provision is actually a "separate contract" or is merely to be examined "separate" from the overall contract at issue for the limited purpose of determining arbitrability.

The leading Supreme Court decision on this issue is *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395.  Therein, the Supreme Court held that a "claim of fraud in the inducement of the entire contract" is a matter to be resolved by the arbitrators, not the federal courts.  *Id*. at 402-04.  However, if there is an alleged fraud that "goes to the 'making' of the agreement to arbitrate," as in the instant case, a federal court may adjudicate that issue.  *Id*. at 403- 04.  In reaching that decision, the Supreme Court relied on the explicit statutory language of Section 4 of the Federal Arbitration Act:

> Under [section] 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in

---

[4]Unfortunately, this case is indicative of the exact problem that Congress intended to eliminate by passing the FAA. Specifically, Congress intended that arbitration "be speedy and not subject to delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404. The instant action has been in litigation for over two and a half years and the parties are still disputing whether to submit this matter to arbitration rather than resolving the merits of Glazer's claims.

issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it.... We hold, therefore, that in passing upon a [section] 3 application for a stay while the parties arbitrate, *a federal court may consider only issues relating to the making and performance of the agreement to arbitrate*.

*Id*. (footnotes omitted) (emphasis added).

In other words, a district court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue." *Id*. at 403. Thus, even if there was fraudulent inducement to sign the contract as a whole, by the terms of Sections 3 and 4 of the FAA, the arbitration clause is severable and will only be voided for some error in its making. *Fazio v. Lehman Bros., Inc.*, 340 F.3d at 393. *See also Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 933 (6th Cir.1998).

This Circuit has interpreted *Prima Paint* to mean that arbitration clauses are "separable" from the contracts in which they are included when examining whether those provisions were fraudulently induced. *See*, *e.g.*, *Burden v. Check into Cash*, 267 F.3d at 488. Yet, contrary to the District court's conclusion and Glazer's arguments, the Supreme Court in *Prima Paint* did *not* hold that arbitration provisions in contracts are "severable" to such an extent that they should be considered *separate and distinct contracts*. Rather, the Supreme Court held merely that arbitration clauses should be reviewed to determine whether the dispute should be referred to arbitration (primarily because Section 4 of the FAA explicitly directs the courts to order arbitration once the arbitration clause is no longer at issue). *Id*. at 403. In other words, arbitration provisions are "severable" because the FAA does not permit the courts to examine the enforceability of contracts containing arbitration provisions. *Id*. at 404. Thus, nothing in *Prima Paint* actually states or provides that arbitration provisions are to be considered separate, distinct and independent contracts, as the District Court concluded.

For the reasons discussed herein, arbitration provisions, although severable insofar as they are considered in determining whether a contractual dispute should be submitted to arbitration, are not "separate, independent and distinct contracts." Although *Prima Paint* clearly requires courts to separately examine arbitration clauses, those clauses should not be considered as "separate contracts" outside of the underlying agreement.

To begin, various courts have routinely discussed why arbitration provisions are not subject to scrutiny as independent contracts in other contexts. For example, in *Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167 (6th Cir.1989), the only decision from this Circuit touching on the issue, the plaintiff argued that *Prima Paint* should "be interpreted as implying that an arbitration clause is an independent contract that is separable from the main contract in which it is found and therefore must have all essential elements of a contract, including consideration." *Id*. at 169. Yet, the panel rejected this position and stated that "[s]uch an interpretation of *Prima Paint* would, however, clearly be inappropriate given the Supreme Court's recent decision in several arbitration cases." *Id*. In fact, the Court noted in footnote 2 of its decision that "the Supreme Court's characterization of arbitration clauses as independent, separable contracts in *Prima Paint*, which was decided in 1967, may be regarded less than persuasive in light of the holdings of the Court in its more recent [FAA] cases." *Id*. at 169, n. 2. The *Wilson Electrical* Court then pointed out that recent decisions of the Supreme Court following *Prima Paint* have consistently emphasized that the FAA is grounded on a strong federal policy favoring arbitration. *Id*. at 169. Based on this analysis, the Court then rejected the claim that an arbitration clause requires separate "consideration" to be enforceable, thereby implying that such provisions are not independent contracts either. *Id*.

Similarly, other circuits have held that "mutuality" is not a requirement of a valid arbitration clause.  *See*, *e.g.*, *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 180 (3rd Cir.1999).  In *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438 (2nd Cir.1995), the Court examined *Prima Paint* and its reliance on a prior Second Circuit case and held that "one might argue, [*Prima  Paint*] indicates that an arbitration clause must be treated as a contract supported by independent consideration.  For the following reasons, however, we reject this characterization."  *Id.* at 452.  In reaching its decision in *Distajo*, the Court clarified that *Prima Paint* merely

> indicated only that arbitration clauses are 'separable' from void or voidable provisions of a contract – *not that they are independent contracts*.  Although we consider an arbitration clause separately for the limited purpose of evaluating a claim of fraudulent inducement, we do not do so for all purposes.

*Id.* (emphasis added).  Thus, the Court ultimately decided that mutuality of obligation was not required to enforce an arbitration agreement if the underlying contract is supported by consideration.  *Id.* at 451-53.

Similar decisions implying that arbitration provisions are not separate, independent contracts were reached in *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir.1998) (concluding "that, under Oklahoma law, mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration"); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp.2d 804, 806-07 (N.D.Ill.1999) (holding that an arbitration clause is not unenforceable for lack of identical obligations); *Randolph v. Green Tree Fin. Corp.*, 991 F. Supp. 1410, 1421-22 (M.D.Ala.1997) (rejecting claim that arbitration clause that required one party to arbitrate all claims, while giving the second party the option not to arbitrate anything, was invalid); *Pate v. Melvin Williams Manufactured Homes, Inc.*, 198 B.R. 841, 844 (Bankr.S.D.Ga.1996) (rejecting argument that arbitration agreement lacked mutuality because defendant company could sue over certain issues, while consumer had to arbitrate all claims). *Cf.*, *Great Earth Co., Inc. v. Simon*, 2000 WL 310354 (S.D.N.Y. March 24, 2000), *opinion withdrawn in part on reconsideration*, 2000 WL 640829 (S.D.N.Y. May 18, 2000) (withdrawing part of opinion wherein the district court initially found that it would have found no "meeting of the minds" existed as to the arbitration clause or arbitration forum clause).  Accordingly, other courts addressing related issues have rejected similar legal arguments made by Glazer and adopted by the District court in this case, and these decisions thus give additional persuasive authority against the position that arbitration clauses should be construed as separate, independent contracts.

If arbitration clauses cannot be considered "independent contracts" when examining contractual formation issues, like mutuality or consideration, how much more so should such provisions *not* be considered "separate contracts" when examining other enforceability issues, such as when examining whether an arbitration clause was fraudulently induced.  In other words, based on the foregoing, it is clear to us that arbitration clauses should not be considered "separate contracts" at all.  Rather, in accordance with *Prima Paint*, arbitration agreements contained in larger contracts should be considered "separate" from the contract only insofar as a federal court (as opposed to the arbitrator) can examine whether the arbitration clause was fraudulently induced or is otherwise unenforceable.

### C.       The District Court Erred In Deciding That The Parol Evidence Rule Did Not Bar Glazer's Testimony.

During the evidentiary hearing before the District Court, Glazer testified that Gruttadauria promised or represented to him that the arbitration provisions contained in the Account Agreements would not be enforced against him, as the Account Agreements were mere formalities to the creation of the accounts with the Appellants.  Based on this extrinsic evidence, Glazer now asserts that the

arbitration provisions in the Account Agreements are not enforceable because they were fraudulently induced.

Conversely, the Appellants argue that allegations of fraudulent inducement of a specific provision in an agreement, such as those made by Glazer herein, cannot be used to contradict the terms and provisions of a signed, written contract. They further argue that the parol evidence rule bars Glazer's evidence of fraudulent inducement as a matter of law. Specifically, they contend that testimony and extrinsic evidence regarding Gruttadauria's alleged oral assurances that SG Cowen would not enforce the arbitration clauses, which directly contradicts the written terms of the executed account agreements, are not admissible to prove any agreement that contradicts the written terms of the Account Agreements.

Generally,

> [w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

3A Corbin, *Contracts* § 573 at 357 (1960). The parol evidence rule, as construed by Ohio courts, states "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (citing 11 *Williston on Contracts* 569-70, § 33.4 (4 Ed.1999)). Thus, absent fraud, mistake or some other invalidating cause, prior or contemporaneous oral agreements may not be used to alter, contradict, contest, or vary an integrated written agreement. *Galmish*, at 788. Contrary to its name, this rule is one of substantive contractual, not evidentiary, law. *Id*.

In *Galmish*, the most recent Ohio opinion discussing the parol evidence rule at length, the Ohio Supreme Court considered whether the plaintiff's claims were barred by that rule. Specifically, the issue in *Galmish* was whether parol evidence was admissible to prove a breach of contract claim when the written contract at issue imposed no affirmative duties to engage in certain performance. The court ultimately found that the parol evidence rule did not bar evidence of the breach of contract claim because the extrinsic evidence went to the making of the contract, not to a provision of that contract. Explaining the nature, history and application of this rule, the court stated:

> The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.

*Id*. at 788-89 (citation omitted); *accord Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 612 (6th Cir.2001) (citing *Galmish* and stating "the parol evidence rule does not operate to prohibit proof

of terms of the agreement; instead, it provides that parol terms are not terms of the agreement at all"). The principle policy behind the rule is to protect the integrity and purpose of written agreements. *Galmish*, at 789 (citation omitted).

However, under Ohio law, "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Id. But cf. Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 756 F.2d 443, 447 n. 2 (6th Cir.1985) (indicating that defendant's alleged promise was one of future performance rather than a representation of past or present material fact, and because "the purpose of an integration clause is to preclude reliance upon promises of future performance that have not been included in the contract," that case did not involve a claim of fraud in the inducement). Yet,

> [t]he principle which prohibits the application of the parol-evidence rule in cases of fraud inducing the execution of a written contract* * * has been regarded as being as important and as resting on as sound a policy as the parol-evidence rule itself. It has been said that if the courts were to hold, in an action on a written contract, that parol evidence should not be received as to *false representations of fact* made by the plaintiff, which induced the defendant to execute the contract, they would in effect hold that the maxim that fraud vitiates every transaction is no longer the rule; and such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing.

> Fraud cannot be merged; hence the doctrine, which is merely only another form of expression of the parol-evidence rule, that prior negotiations and conversations leading up to the formation of a written contract are merged therein, is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud.

*Id*. at 789 (citation omitted) (emphasis added). In other words:

> It was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery.

*Id*. (citation omitted). *See also F.W. Dodge Corp. v. Fultz*, 175 N.E.2d 543, 546 (Ohio App.1961) ("it is nevertheless clear that the parol evidence rule does not preclude a party from s[h]owing that a writing which apparently constitutes a contract, was not intended or understood by either party to be binding upon them").

> Yet, notwithstanding the foregoing principles, this rule may not be side-stepped by

> a fraudulent inducement claim *which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing*. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.

*Galmish*, at 790 (citation omitted) (emphasis added). Stated differently, under Ohio law,

> [t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to

prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit.

*Id.* (citation omitted).  Accordingly, "the parol evidence rule does apply '*to such promissory fraud* if the evidence in question is offered to show a promise which contradicts an integrated written agreement.  Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.'"  *Id.* at 790-91 (citation omitted)(emphasis added). *See Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 613 (6th Cir.2001) (citing *Galmish*, 734 N.E.2d at 791) (stating "'fraud in the inducement,' in the sense intended in *Coal Resources* and *Galmish*, is a fraudulent misstatement of *fact* [as opposed to promissory fraud] that induces a party to enter a contract, not a fraudulent promise of future performance that is within the scope of the subject matter of the written contract but that was not included in it.")

As in *Watkins*, Glazer's claim is not one alleging a fraudulent misstatement of fact, but one alleging "a fraudulent promise of future performance that is within the scope of the subject matter of the written contract but that was not included in it."  *Watkins*, 254 F.3d at 613.  The fraudulent promise that Glazer is alleging is not only within the scope of the subject matter of the written contract and not included therein, but directly contradictory to the terms of the signed written agreements.**5**

In *Watkins*, this Court examined a promissory fraud claim in which the plaintiff alleged that it was fraudulently induced into signing an agreement based on a promise of future performance by the defendant which was not included in the contract and which the defendant failed to fulfill.  *Id.* Relying on *Galmish*, the Court held that parol evidence was not admissible to show "a promise which contradicts an integrated written agreement."  *Id.* (quoting *Galmish*, 734 N.E.2d at 791).  The court held that the promise was neither "independent of [n]or consistent with the written instrument," and as such parol evidence was inadmissible.  *Id.* (quoting *Galmish*, 734 N.E.2d at 791).  *See also National City Bank, Akron v. Donaldson*, 642 N.E.2d 58, 60 (Ohio App. 1994).

Similarly, in *Coal Resources*, 756 F.2d 443, this Court held that parol evidence was admissible to show that the promisor had no intention of performing the promises that *were included in the agreement*, but was not admissible to show that the promisor had no intention of performing the promise that *was not included in the agreement*.  *Id.* at 446-47.  Finally, the parol evidence admitted in *Galmish*, 734 N.E.2d at 791, itself did not "seek to contradict or vary the terms of the written agreement."  *Id.*  Instead, the fraud alleged was that the promisor, at the time of entering into the agreement, had no intention of performing a condition precedent to the promisee's ability to benefit from the contract as written.  *Id.*

In reaching its decision in this case, the District Court relied on *F.W. Dodge Corp. v. Fultz*, 175 N.E.2d 543, and *National City Bank, Akron v. Donaldson*, 642 N.E.2d 58.  However, these cases are distinguishable and were erroneously relied upon.  In *Fultz*, the court held that the parol evidence rule did not prohibit a party from proving that a written agreement (as opposed to a provision in that agreement) was not intended or understood by either party to be binding upon them.  *Fultz*, at 546. In fact, the court permitted the defendant Fultz to introduce testimony as to certain oral conversations and oral promises that the plaintiff's corporate representative and sales person had

---

**5**For a discussion of the distinction between fraud in the factum and promissory fraud in the inducement under Ohio law *see Williams v. Edwards*, 717 N.E.2d 368, 374 (Ohio App. 1 Dist. 1998) ("Furthermore, fraud is generally predicated on a *misrepresentation relating to a past or existing fact*, and not on *promises or representations relating to future actions or conduct*.  An exception to this rule exists, however, where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise.  In such a case, the individual possesses actual fraudulent intent and a claim for fraud may be asserted against him.") (emphasis added). *See also Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 488-89.

made that the company would not enforce the one-year subscription agreement at issue.  Thus, unlike the instant action, which involves the enforceability of a *provision* in the account agreements, the issue in *Fultz* was whether the parties intended the contract as a whole to be binding upon them. *Id*. at 546.  Accordingly, the application of the parol evidence rule in *Fultz* is inapplicable in this case because the arbitration provisions at issue in the Account Agreements are not independent contracts.

Similarly, in *Donaldson*, 642 N.E.2d 58, in deciding whether the parol evidence rule was applicable, the court asked whether the parties intended the signed document, the alleged contract, to be a complete and accurate integration of the agreement between the parties.  The appellate court permitted evidence that Donaldson and the bank, through a sales person, did not intend the written and signed *document* (again, as opposed to a provision or term of that agreement) to be an enforceable contract.  Thus, *Donaldson* is also inapposite and distinguishable from the instant action.

In this case, Glazer seeks to introduce evidence of a promise that directly contradicts a term of the integrated written agreement.  Here, the parties have not disputed, and we therefore assume, that the Account Agreements at issue are integrated contracts.[6]  Further, Glazer is not asking us to invalidate the contract on the ground that SG Cowen had no intention of performing it.  Instead, he is asking us to admit evidence to show that Gruttaduaria made an oral promise not to enforce the arbitration clause - a promise directly contradicted by the language of the agreement.  *See Galmish*, 734 N.E.2d at 790 (assertion that there was "a statement or agreement made prior to the contract [that] is different from that which now appears in the written contract" are exactly the type which the "Parol Evidence Rule was designed to prohibit").  Glazer does not claim that the parties never intended for the Account Agreements signed and executed by him to be unenforceable or not binding upon them; in fact, he relies upon those account agreements as the basis for his claims against the Appellants.  Rather, he argues that the parties never intended for the *arbitration provisions* at issue, as opposed to the Account Agreements, to be binding.

Thus, the distinction regarding whether an arbitration provision is a separate, distinct contract or whether it is merely "severable" in determining whether to send a dispute to arbitration, as discussed *supra*, becomes critical.  In this case, it is undisputed that Glazer freely signed the Account Agreements that contained arbitration clauses allowing the Appellants to elect to arbitrate any controversy or claim arising out of or relating to the contracts or the breaches thereof.  [J.A. at 811-18]  Further, the Account Agreements also each contain a clause providing that these "Agreement[s] [are] not subject to any oral modification and it may only be amended or modified in a writing signed by [SG Cowen]."  [J.A. at 811-18]

It is clear that, under Ohio law, the parol evidence rule prohibits a party from challenging the *terms* of a written contract through the use of extrinsic evidence, such as that proffered by Glazer in this case.  Accordingly, based upon Ohio law and the facts of this case, Glazer cannot challenge the enforceability of the arbitration *provisions* within the Account Agreements through the use of parol evidence.  *See Galmish*, at 791.  As a result, the District Court erred as a matter of law when it held that parol evidence was admissible to prove that Glazer was fraudulently induced to agree to the Account Agreements containing the arbitration clauses at issue.  Thus, it was also error when it considered Glazer's testimony regarding Gruttadauria's oral promises that the arbitration provisions would not be enforced.

---

[6]The parties have not raised any issue regarding whether the agreements are integrated, written contracts.  While a prerequisite to the parol evidence rule is that the contract must be a complete and accurate integration of the parties' agreement, a document that appears, on its face, to be a complete and accurate integration will sufficiently meet this requirement.  *See*, *e.g.*, *National City Bank, Akron, v. Donaldson*, 642 N.E.2d at 60.

### D.      The District Court Erred In Finding That Glazer Was Fraudulently Induced To Sign The Account Agreements Containing Arbitration Clauses.

As a result of the District Court's reliance upon Glazer's oral testimony, it concluded that Glazer had sufficiently proven that he was fraudulently induced to sign the arbitration provisions at issue. [J.A. at 250-61]  In reaching its decision, the District Court relied wholly upon that oral testimony. [J.A. at 246, 248-49, 250-51, 255, 256-61]  As stated above, Glazer's oral testimony, being parol evidence, was inadmissible and should not have been relied upon in examining the Appellants' motion to stay pending arbitration.  Absent this inadmissible parol evidence, there is insufficient evidence in the record for any factual finding of fraudulent inducement[7] in the making of the arbitration provision.  In fact, this parol evidence appears to be the *only* evidence relied upon by the District Court in reaching its decision.  As a result, the elements of fraudulent inducement cannot be satisfied.  The Court thus finds that the District Court's factual findings as to the fraudulent inducement claim were clearly erroneous.  *See*, *e.g., Great Earth v. Simons*, 288 F.3d at 888.

Accordingly, there being no admissible evidence to support the fraudulent inducement claim, a valid agreement to arbitrate exists pursuant to the arbitration clauses contained in the four Account Agreements.  As a result, Glazer's claims against the Defendants-Appellants are covered by enforceable arbitration clauses, and the District Court should have stayed this matter until the arbitration process was complete.  *See* 9 U.S.C. § 3.  Its decision was not in accord with the FAA's mandate and innumerable decisions from this Circuit favoring arbitration agreements and resolving doubts about arbitrable issues in favor of arbitration and, therefore, cannot be sustained.  *See*, *e.g.*, *Masco Corp. v. Zurich North American Ins. Co.*, 382 F.3d 624 (6th Cir.2004).

### E.      The District Court Did Not Err In Holding That The Arbitration Clause Contained In The 1996 Option Agreement Was Rendered Unenforceable Because It Was Modified And/Or Superceded By Subsequent Events And/Or Conduct.

The Appellants also contend that the District Court erred in holding that the 1996 Option Agreement and the arbitration provision contained therein was not applicable to this case. [J.A. at 260] The District Court found that "[w]hatever obligations [the 1996 Options Agreement] may have imposed initially, this agreement was superseded by Gruttadauria's conduct in 1998.  In 1998, the Tissue account was effectively closed and all the assets were transferred to the new Gruttadauria account."  As a result, the court held that the Options Agreement for the defunct Tissue Account cannot be used to side step Gruttadauria's later representations. [J.A. at 260.]

It is undisputed that the 1998 Account Agreements effectively closed the Tissue Account and transferred the Tissue Account assets into new accounts with the Appellants under Gruttadauria's management.  It is a fundamental precept of contract law that parties may agree to discharge or terminate a contract in favor of creating a second agreement to replace the former, and, when that occurs, the initial agreement is superceded and is no longer enforceable as to any party thereto.  *See* 3A Corbin on Contracts § 574 (1960); Restatement (Second) of Contracts §279 (1979); 17A Am.Jur.2d *Contracts* § 539 (2004).  Thus, as noted in the Restatement, parties may substitute one

---

[7]Under Ohio law, a Plaintiff must prove six elements in order to prove fraudulent inducement. He must prove by clear and convincing evidence that: (1) a representation, or where there is a duty to disclose, a concealment of fact; (2) which is material in nature; (3) was made falsely with knowledge of its falsity or with utter disregard or recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another to rely upon said misrepresentation or concealment; (5) which results in justifiable reliance upon that representation or concealment; and (6) proximately causing some injury. *Davis v. Sun Refining and Marketing Co.*, 671 N.E.2d 1049, 1058 (Ohio App. 1996).

contract for another, thereby discharging the pre-existing duty of the one party and extinguishing the other's right to enforce the original duty.  Restatement (Second) of Contracts § 279.

In the case *sub judice*, when the parties agreed to close the Tissue Account and terminate the 1996 Option Agreement, the parties substituted one of the 1998 Account Agreements for the 1996 Option Agreement.  The arbitration clause contained in the 1996 Option Agreement was legally substituted, and therefore superseded, by the subsequent Account Agreements.  Thus, any arbitration provision in the 1996 Option Agreement is no longer enforceable and is inapplicable to this action.  As a result, the Court need not address whether Gruttadauria's subsequent criminal conduct superceded the 1996 Option Agreement because the substitution of the four Account Agreements supercedes the 1996 arbitration provision.

Therefore, the District Court's decision on this issue must be sustained.

## CONCLUSION

Accordingly, for the reasons discussed *supra*, we will AFFIRM, in part, REVERSE, in part, and REMAND this case for proceedings not inconsistent with this opinion.