RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA *ex rel*. PAUL DORSA,

*Relator-Appellee*,

*v.*

No. 21-5228

MIRACA LIFE SCIENCES, INC.,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:13-cv-01025—Bernard A. Friedman, District Judge.

Argued:  December 8, 2021

Decided and Filed:  May 4, 2022

Before:  COLE, GIBBONS, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  David Barmak, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Washington, DC, for Appellant.  Nathan C. Sanders, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  David Barmak, Jennifer R. Budoff, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Washington, DC, for Appellant.  Nathan C. Sanders, James F. Sanders, William T. Ramsey, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

COLE, Circuit Judge.  Paul Dorsa filed a retaliation claim under the False Claims Act against his former employer, Miraca Life Sciences, Inc., in November 2013.  Miraca sought to dismiss this claim because Dorsa had agreed to binding arbitration as part of his employment

agreement with Miraca. The district court denied Miraca's motion to dismiss, finding that the arbitration clause did not cover Dorsa's retaliation claim. Miraca appealed, but this court dismissed the appeal for lack of jurisdiction. Miraca then filed a petition to stay the action and to compel arbitration. The district court also denied that petition. On appeal, Miraca contests the district court's authority to decide threshold questions of arbitrability and its ruling on the merits. But Miraca has forfeited and waived the arguments now before us, so we affirm.

## I. BACKGROUND

In August 2012, Paul Dorsa joined Miraca Life Sciences, Inc.[1] as its Senior Vice President of Commercial Operations. Miraca is a laboratory company that offers pathology services for healthcare providers. When Dorsa was hired, he entered into an employment agreement with Miraca that contained a binding arbitration clause.

Dorsa describes that, during his employment with the company, he observed Miraca giving monetary donations and free consulting services to healthcare providers to induce pathology referrals to Miraca's lab. Dorsa learned that these "programs" violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and the Stark Law, 42 U.S.C. § 1395nn. Because nearly a third of the tainted referrals led to claims for Medicare reimbursement, Dorsa also determined that Miraca had committed thousands of violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1). Dorsa decided to lodge internal complaints with Miraca's management about the illegal programs in September 2013.

When Dorsa confronted Miraca CEO Frank Basile about the donation and consulting programs, Basile told Dorsa that Miraca would not change its practices, and that if they ever "came to light," Miraca would "just settle with the Government." (Second Am. Compl., R. 59, PageID 339.) Miraca Business Analyst John Ripley echoed Basile's comments and told Dorsa that Ripley had "three file boxes in [his] office" containing evidence of Miraca's illegal donation program "that [would] put us in jail." (*Id.*) Dorsa then reported his concerns to Miraca's compliance hotline on September 16, 2013.

---

[1]Miraca Life Sciences, Inc. is now Inform Diagnostics, Inc.

Around this time, a friend within the company told Dorsa that Miraca management was "coming for him" because of the complaints he had been making.  (*Id.* at PageID 340.)  On September 18, 2013, Dorsa received a call informing him that a sexual harassment complaint had been made against him by another employee.  Five days later, the Miraca employee who allegedly made the complaint told Dorsa that she did not file a complaint or report any sexual harassment to Miraca management.

Dorsa filed a qui tam action against Miraca on September 20, 2013.  He alleged two FCA claims, as well as common law claims for payment by mistake of fact and unjust enrichment.

Four days after Dorsa filed suit—and the morning after he spoke to the coworker who denied filing the sexual harassment complaint—Miraca fired Dorsa via letter.  The letter stated that Dorsa was terminated "[p]ursuant to the . . . Employment Agreement . . . for Cause on an immediate basis."  (Sept. 24, 2013 Letter from Miraca to Paul Dorsa, R. 59-28, PageID 603.)  More specifically, the letter explained that Miraca had conducted "a reasonable investigation" and "concluded that [Dorsa] violated the Company's policy against workplace harassment on several occasions and thereafter showed a complete lack of candor in response to Miraca's inquiries[.]" (*Id.*)

In November 2013, Dorsa amended his complaint first to include an FCA retaliation claim and then again to bring additional factual allegations.  Dorsa alleges that Miraca terminated him in retaliation for the actions he took to stop the company's FCA violations.  Dorsa also states that Miraca never conducted an investigation or made any inquiries about the purported harassment, that the employee at issue never made a sexual harassment complaint or even spoke to Miraca executives before Dorsa was terminated, and that Miraca's stated reason for terminating him was pretextual.  He seeks back pay and front pay, including long term incentive payments he would have received under the employment agreement had he not been terminated.  He also seeks damages and attorney fees.

The government investigated the claims against Miraca for several years, receiving twelve extensions of the FCA period while the government considered whether to intervene in Dorsa's case.  As a result, Dorsa's complaints remained mostly sealed between September 20,

2013 and January 8, 2019.  Eventually, on November 26, 2018, the government intervened for purposes of settlement.  Under the settlement, Miraca agreed to pay $63.5 million plus interest to resolve FCA claims asserted in three separate actions, including Dorsa's.  The settlement did not resolve Dorsa's retaliation claim or any claim he had to attorney fees.

## A.  Miraca's Motion to Dismiss

On September 26, 2019, Miraca moved to dismiss the retaliation claim with prejudice under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, under Rules 12(b)(1) and 12(b)(3).  Miraca argued that Dorsa could not litigate his retaliation claim in court because the arbitration clause stipulated that "any dispute, claim or disagreement arising out of or in connection with" the employment agreement must be resolved through mediation and arbitration. (Employment Agreement, R. 95-1, PageID 758.)  According to Miraca, Dorsa's retaliation claim arises "out of or in connection with" the employment agreement because that language "cover[s] *all interactions* between the employer and the employee."  (Def.'s Mem. in Supp. of Mot. to Dismiss, R. 94, PageID 739–40 (emphasis added).)  By advancing this argument, Miraca asked the district court to find that the arbitration clause encompassed Dorsa's retaliation claim.  In other words, Miraca invited the district court to rule on the scope of the arbitration clause.

When Dorsa opposed Miraca's motion to dismiss, he argued that the arbitration clause did not cover his retaliation claim because the claim exists independently from the employment agreement.  On reply, Miraca then asserted for the first time that the district court did not have the authority to rule on a threshold question of arbitrability, arguing the parties had agreed to delegate such questions to an arbitrator.

The district court ruled in favor of Dorsa.  It found that the arbitration clause failed to cover the FCA retaliation claim because the claim has "nothing to do with" the employment agreement itself: "[T]he arbitration clause in the present case, which covers only disputes arising from or connected with the Employment Agreement, plainly does not cover plaintiff's FCA retaliation claim."  *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, No. 3:13-CV-01025, 2019 WL 13130022, at *4 (M.D. Tenn. Dec. 11, 2019).  Notably, the district court did not

address Miraca's reply argument about the court's authority to decide threshold questions of arbitrability.

Miraca appealed the district court's decision on December 26, 2019. The Federal Arbitration Act ("FAA"), however, confers appellate jurisdiction only when a district court denies a request to stay the proceedings or to compel arbitration. 9 U.S.C. § 16(a)(1)(A)–(B). We found that "[t]he essence of Miraca's motion to the district court was a request that the court dismiss the action, not that the court stay the proceedings or issue an order compelling arbitration," so we dismissed the appeal for lack of jurisdiction. *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 983 F.3d 885, 889 (6th Cir. 2020).

**B. Miraca's Petition to Stay the Proceedings and Compel Arbitration**

On remand, Miraca filed another motion, this time petitioning the district court to stay the proceedings and compel arbitration. Miraca argued that any threshold question regarding the arbitrability of Dorsa's retaliation claim must be resolved by an arbitrator, and not by the district court.

The district court denied Miraca's petition. The court echoed its previous determination that the arbitration clause fails to encompass the retaliation claim, again noting that the claim "does not aris[e] out of or in connection with" the employment agreement as the arbitration clause requires. *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, No. 3:13-CV-01025, 2021 WL 679275, at *3 (M.D. Tenn. Feb. 22, 2021). The district court also found that its holding was further supported by a carve-out sentence within the arbitration clause, which allows Dorsa to pursue equitable relief (like front and back pay related to his retaliation claim) in court rather than through arbitration. *Id.* (internal quotations omitted).

Additionally, the district court held that Miraca had waived its argument about its lacking authority to rule on threshold questions:

> [Miraca] waived this argument by not presenting it in its motion to dismiss. In that motion, [Miraca] sought dismissal of the complaint and argued that the Court should determine the arbitrability of [Dorsa's] claim. It is now too late for [Miraca] to change its tack and argue instead that an arbitrator must make this determination and that the Court, in fact, lacks authority to do so.

*Id.* (citations omitted).  The district court rejected the delegation argument on the merits too.  *Id.* at *3–4.  Miraca timely appealed this ruling, and we have appellate jurisdiction under 9 U.S.C. § 16.

## II.  ANALYSIS

On appeal, Miraca advances two primary arguments: (1) that an arbitrator—not the district court—must determine whether the retaliation claim is arbitrable; and (2) that the district court erred in concluding that the retaliation claim is not arbitrable.  We consider each argument in turn below.

### A.  Waiver

We apply a "strong presumption in favor of arbitration" and do not "lightly infer[]" that a party has waived its right to arbitration.  *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005)).  Despite this presumption, "it has long been settled that a party can waive its contractual right to arbitration[.]"  *Id.* (citing *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950)).  Accordingly, "[w]e have explained that a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'""  *Id.* (quoting *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010)).  Here, Miraca's inconsistent actions and delayed assertion establish that Miraca waived its right to arbitrate.

#### i.  Actions Inconsistent with Reliance on the Arbitration Agreement

Miraca asked the district court to determine that the retaliation claim was covered by the scope of the arbitration agreement when it filed its motion to dismiss.  Put differently, Miraca invited the district court to rule on the arbitrability of the claim.  On reply, Miraca changed course to contend that an *arbitrator* had to rule on the arbitrability of the claim.  The district court did not address Miraca's latter argument, presumably because Miraca raised it too late. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("We have found

issues to be waived when they are raised for the first time . . . in replies to responses."); *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008). When Miraca later petitioned the district court to compel arbitration and stay the action, it argued again that the arbitration agreement requires an arbitrator to decide whether the retaliation claim is arbitrable. But this argument came after Miraca asked the district court to decide the very same issue.

Miraca's filing of the motion to dismiss is completely inconsistent with its later attempts to rely on the arbitration agreement. Miraca may not first ask the district court to determine arbitrability and then later argue that the court cannot decide after receiving an unfavorable ruling.

At least one other circuit court has found that a party waives its right to arbitration in similar circumstances. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1295–96 (11th Cir. 2014); *see also, e.g.*, *Barras v. Branch Banking & Tr. Co.*, 685 F.3d 1269, 1274–75 (11th Cir. 2012). We agree. A party acts inconsistently when it first asks a court to rule on arbitrability and then later argues that an arbitrator must do so. Miraca's inconsistent actions therefore establish the first waiver prong.

### ii. Actual Prejudice

In the context of arbitration waiver, prejudice occurs "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration[.]" *Johnson Assocs.*, 680 F.3d at 719 (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)). That is exactly what happened here: Miraca asked the district court to find that the retaliation claim was arbitrable by moving to dismiss. After losing this motion on the merits, Miraca then attempted to relitigate the issue by invoking arbitration and insisting that an arbitrator must decide the threshold question of arbitrability. But Miraca may not take "two trips around the pretrial-motion-and-appeal carousel" because doing so "undermine[s] the purpose of the Federal Arbitration Act's 'liberal federal policy favoring arbitration agreements.'" *In re Checking Acct. Overdraft Litig.*, 754 F.3d at 1296 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Substantially invoking the litigation machinery qualifies as the

kind of prejudice . . . that is the essence of waiver." *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 559 F.2d 268, 269 (5th Cir. 1977).

Prejudice also occurs "when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Johnson Assocs.*, 680 F.3d at 719 (quoting *Kramer*, 943 F.2d at 179). Here, Miraca waited well over a year after filing the motion to dismiss to petition the court to compel arbitration. In so doing, Miraca subverted one of the "prime objective[s] of an agreement to arbitrate," which "is to achieve 'streamlined proceedings and expeditious results.'" *In re Checking Acct. Overdraft Litig.*, 754 F.3d at 1295 (quoting *Preston v. Ferrer*, 552 U.S. 346, 357 (2008)). Miraca's tactics forced Dorsa to spend resources litigating two contradictory arguments: first Miraca's motion to dismiss and its eventual appeal, and then to litigate Miraca's petition to compel arbitration and its current appeal. These duplicative expenses could have been avoided because Miraca "had ample opportunity to demand arbitration" at the outset of the case. *Id.* at 1296 (quoting *Morewitz v. W. Engl. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995)) (finding prejudice when a defendant first invokes "the district court's litigation machinery to decide the gateway issue" before doubling back to seek arbitration because the plaintiff is forced "to spend resources opposing the original motion and contesting its appeal"). The unnecessary delay and expense Dorsa incurred constitute prejudice.

Because Miraca acted inconsistently and Dorsa incurred delay and expense as a result, we conclude that Miraca has waived its ability to challenge the district court's authority to rule on arbitrability.

**B. Forfeiture**

That leaves us to consider Miraca's contention that the district court erred in determining that the retaliation claim falls outside the scope of the arbitration agreement.

"Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Nassiri v. Mackie*, 967 F.3d 544, 547 (6th Cir. 2020) (quoting *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011)). For this reason, arguments are typically forfeited when the parties do not raise them in the court

below.  *Scottsdale*, 513 F.3d at 552; *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  We will occasionally consider a forfeited argument on appeal in "exceptional cases" or if a "plain miscarriage of justice" would result, but we "rarely exercise[] such discretion."  *Id.* (citations omitted).

Here, when the district court denied Miraca's motion to dismiss, the court found that the retaliation claim fell outside the scope of the arbitration agreement and that, consequently, the claim did not need to go to arbitration.  Miraca did not challenge this conclusion when it filed its petition to stay arbitration.  Nor did Miraca otherwise dispute the scope of the arbitration agreement in its petition.  Instead, Miraca focused its petition argument on a single position: that only an arbitrator had the authority to rule on the agreement's scope, and that the district court could not rule on arbitrability.

Miraca raised the merits of the district court's motion-to-dismiss ruling only when it contested that decision on appeal.  But, as we said the last time we considered this case on appeal, we are not permitted to review a district court's denial of a motion to dismiss in the arbitration context.  *Miraca Life Scis., Inc.*, 983 F.3d at 889 ("When 'the essence of [a party's] motion was not for relief under the FAA, . . . no § 16(a) appellate jurisdiction exists over the denial of that motion." (quoting *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1386 (10th Cir. 2009)).  For this reason, it would be inappropriate for us to circumvent the clear strictures of 9 U.S.C § 16 and reach the merits now.  Miraca did not argue about the district court's motion-to-dismiss ruling in its petition, so Miraca has forfeited this argument.

Moreover, there are no special circumstances to justify our consideration of this forfeited argument.  To the contrary, giving Miraca a second chance to argue on the merits would cause further injustice to Dorsa, who has incurred delay and expenses due to Miraca's inconsistent actions.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court.