NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0121n.06

Nos. 21-3762/22-3479

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 09, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SET SHAHBABIAN, M.D., | ) |
|    Plaintiff Counter Defendant-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| TRIHEALTH INC., MAYFIELD CLINIC INC., | ) |
|    Defendants-Appellees, | ) |
| | ) |
| TRIHEALTH G LLC, dba TriHealth Physician Partners, | ) |
|    Defendant Counter Claimant-Appellee. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before:  SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  After a peer review committee issued negative findings against him because of multiple, serious surgical errors, Dr. Set Shahbabian, a neurosurgeon, relinquished his surgical privileges.  His productivity plummeted as a result, giving TriHealth, Inc. and TriHealth G, LLC (collectively, "TriHealth"), his employer and the operator of the hospital where he held privileges, the right to recoup the nearly $680,000 it overpaid on his employment contract.  Shahbabian refused to pay and instead sued TriHealth and Mayfield Clinic, Inc. ("Mayfield"), a private neurosurgery group, alleging that he was pressured to give up his privileges because of his age.  He brought various federal and state law claims, including under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and Ohio's anti-discrimination laws.

The district court held that Shahbabian failed to create a fact question on any of his twelve claims and granted summary judgment to TriHealth and Mayfield. The district court also granted summary judgment to TriHealth on its breach of contract counterclaim and ordered Shahbabian to repay his unearned compensation plus interest. We affirm.

**I.**

Since the 1980s, Shahbabian performed most of his surgeries at Good Samaritan Hospital—a facility operated by TriHealth. In 2014, at age seventy, Shahbabian sold his independent practice to, and became an employee of, TriHealth. He and TriHealth signed a five-year employment contract with no expectation of renewal. TriHealth agreed to pay Shahbabian $968,000 annually for satisfying certain productivity metrics. Shahbabian would receive his full salary for the first three years of the contract regardless of his productivity. After that, were Shahbabian not to meet his productivity target, the contract allowed TriHealth to recoup the difference between his compensation and annual productivity targets.

Good Samaritan conditions its physicians' clinical privileges on their participation in a quality review process. Administered by physicians representing a cross-cut of Good Samaritan's various departments, this peer review system is designed to identify and remedy improper, risky, or reckless medical decisions. A physician has the right to appeal negative assessments through Good Samaritan's administrative review process.

Shahbabian's cases were frequently scrutinized for quality-of-care concerns. In 2011, for instance, one of Shahbabian's patients sustained excessive blood loss during surgery, was left paralyzed following the procedure, and later died. The surgery peer review committee found Shahbabian's conduct exhibited "reckless or recurrent at-risk behavior"—the most serious rating

a Good Samaritan physician can receive. In 2012, Shahbabian was cited for "at-risk behavior" because another patient experienced abnormal blood loss.

In early 2015, after he became a TriHealth employee, three more of Shahbabian's cases were flagged for reckless or recurrent at-risk behavior. One was because Shahbabian's patient experienced post-surgical complications that required another neurosurgeon to perform a second operation; another because Shahbabian prescribed an unapproved antibiotic that left the patient at risk of severe infection; and a third because Shahbabian failed to remove part of a catheter from a patient before completing surgery. Shahbabian did not appeal any of these findings. Soon after, Dr. George Kerlakian, Good Samaritan's surgery department chair, issued Shahbabian a correction plan limiting his surgical hours and imposing oversight on his more complicated cases.

Meanwhile, Shahbabian's health issues were mounting. He was receiving treatment for worsening anxiety, fatigue, and hypertension. Primary osteoarthritis caused his knees to buckle suddenly. Shahbabian's colleagues saw signs of his physical decline too. Dr. Robert Collins, TriHealth's chief medical officer, observed Shahbabian grip a wall for support just to walk down a hallway. Shahbabian told his doctor that he did not have the stamina he used to and intended to work full time until his income protection ended.

Concern with Shahbabian's quality of care boiled over during a May 18, 2017, surgery peer review committee meeting after two more of his cases were presented. Committee members were frustrated that prior interventions had not corrected Shahbabian's outcomes and felt that they were "simply running into the same problem over and over and over again." There was "enough concern [among committee members] that patient safety was in question and Dr. Shahbabian should not be operating."

After the meeting, Collins and two other doctors in Good Samaritan's medical leadership presented Shahbabian with a choice: he could voluntarily pause his surgical activities pending an evaluation of his cases or they would seek a summary suspension of his surgical privileges during the inquiry. Initially, Shahbabian agreed to suspend his surgeries pending an evaluation. But, before the review could take place, Shahbabian, through his lawyer, informed Good Samaritan that he had decided to "voluntarily relinquish" his surgical privileges.

Unable to perform surgeries, Shahbabian struggled to meet even his reduced productivity target. TriHealth attempted to renegotiate his employment contract, but Shahbabian rejected proposals that he transition into a non-surgical role. Shahbabian's contract remained in place until it expired on May 1, 2019. TriHealth declined to renew it. TriHealth then determined that, based on his productivity levels, it had overpaid Shahbabian by $679,711.61. It sent him a reconciliation notice demanding repayment. Shahbabian refused to pay.

He instead sued TriHealth and Mayfield. TriHealth countersued for breach of contract seeking to recoup Shahbabian's unearned compensation. The district court granted summary judgment to TriHealth and Mayfield on each of Shahbabian's claims. *Shahbabian v. TriHealth, Inc.*, No. 1:18-cv-790, 2021 WL 3110073, at *18 (S.D. Ohio July 22, 2021). It also granted summary judgment for TriHealth on its breach of contract claim and ordered Shahbabian to repay TriHealth $679,711.61. *Id.* In a subsequent order, the district court awarded pre- and post-judgment interest on TriHealth's money judgment. Shahbabian timely appealed both orders, resulting in two case numbers (Nos. 21-3762 and 22-3479) that were consolidated for purposes of briefing and submission.

## II.

We review a grant of summary judgment de novo. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

The district court held that Shahbabian failed to show direct or circumstantial evidence of age discrimination and could not demonstrate a fact issue as to his age-discrimination related retaliation claims.[1] The district court also denied him leave to file a TriHealth executive's declaration to support this age discrimination claims. Shahbabian challenges these rulings on appeal.

### 1. Age Discrimination

Shahbabian argues that TriHealth, aided and abetted by Mayfield, forced him to stop operating "because of" his age. 29 U.S.C. § 623(a)(1). To prevail on an age discrimination claim, a plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). Shahbabian attempts to prove his claim using both direct and circumstantial evidence.

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Circumstantial evidence allows a jury to infer unlawful discrimination. *See Willard v. Huntington*

---

[1] We analyze age discrimination and retaliation claims brought under Ohio law in the same way as their federal counterparts. *See Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (discrimination); *Blizzard*, 698 F.3d at 288 (retaliation).

*Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). We evaluate circumstantial evidence cases under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). Under that framework, a plaintiff must first show a prima facie case of discrimination. *Id.* If successful, the employer must offer a legitimate, non-discriminatory reason for the adverse action. *See Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 581 (6th Cir. 2022). If it does, the plaintiff must demonstrate that the employer's reason was a pretext for discrimination. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 325 (6th Cir. 2021).

Initially, we question whether Shahbabian can claim TriHealth discriminated against him because "the but-for cause for [his] reduction in work and eventual cessation of surgical operations was, in the final analysis, his own *voluntary* relinquishment." *Shahbabian*, 2021 WL 3110073, at *8 (emphasis added); *see Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181–82 (6th Cir. 2004) (explaining that to state a prima facie case of age discrimination, a plaintiff must show that he suffered a "materially adverse change in the terms or conditions of . . . employment *because of [the] employer's conduct*" (emphasis added) (citation omitted)). But Shahbabian cannot establish age discrimination in any event.

### a. Direct Evidence

Shahbabian points to twenty-three statements made by TriHealth and Mayfield doctors and executives that he contends directly show age bias. "[D]irect evidence is 'smoking gun' evidence that 'explains itself,'" so Shahbabian must clear a "high bar" to create a jury question with direct evidence. *Pelcha*, 988 F.3d at 324, 325 (quoting *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016)).

Most of the comments that Shahbabian identifies were not even about his age; instead, they focused on his declining health and competency and approaching retirement. Age, declining health, competency, and retirement, while often correlated, "are not synonyms" in the age discrimination context. *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006); *see also Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992); *cf. Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 331–32 (6th Cir. 2012). Therefore, these statements must be understood as implicating factors other than his age given the overwhelming evidence of Shahbabian's declining neurosurgical ability, increasing health problems, and impending retirement plans.

Shahbabian also recalls a meeting with Collins and another doctor where Collins referred to him as a "legend" and the doctors asked if he was "75." Although asking if he was "75" referred to his age, the question does not prove that his doctor-peers asked him to pause his surgeries because of his age "without requiring any inferences," and thus is not direct evidence. *Rowan*, 360 F.3d at 548. The remaining comments Shahbabian identifies—including one implying he was from a "different era" and another asking whether he was born in "1890"—occurred well before he was asked to stop operating and thus cannot constitute direct evidence. *See Diebel v. L & H Res., LLC*, 492 F. App'x 523, 528 (6th Cir. 2012) ("temporal connection [was] attenuated at best" when age-related comments came more than seven months prior to an adverse decision).

Therefore, Shahbabian has failed to establish a genuine issue of material fact based on direct evidence.

### b. Circumstantial Evidence

Assuming Shahbabian can satisfy his prima facie case, he cannot show that TriHealth's non-discriminatory reason—his increasingly poor outcomes that jeopardized patient safety—was pretextual. "Plaintiffs typically show pretext in one of three ways: '(1) that the proffered reasons

had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action.'" *Miles*, 946 F.3d at 888 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Shahbabian's attempt to show pretext essentially covers categories two and three.

Shahbabian makes little attempt on appeal to dispute the findings of the peer review committees that his reckless medical judgment caused his patients significant harm and did not contest the findings at the administrative level. Instead, he insists that his peers' criticism of his competence was a proxy for his age. While "an older employee [cannot] be fired because the employer believes that productivity and competence decline with old age," the ADEA does not condemn decisions "wholly motivated by factors other than age . . . even if the motivating factor is correlated with age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610–11 (1993). Here, it is clear that the peer review committee was "wholly motivated by factors other than age," namely patient safety, given Shahbabian's alarming outcomes that included rendering a patient impotent, leaving another a quadriplegic, repeatedly failing to administer proper antibiotics, and performing elective surgery that left a patient in severe pain. Shahbabian's health issues were also a legitimate concern because they compromised his ability to perform neurosurgery. As the district court put it, "[n]o reasonable juror would think that reckless or recurring at-risk behavior in a neurosurgical context did not actually motivate or was insufficient to warrant the committee's discussion with Dr. Shahbabian about temporarily abstaining from operating." *Shahbabian*, 2021 WL 3110073, at *9. In short, Shahbabian's peers acted because of his declining competency, not because of his advancing age. Nothing in the record is to the contrary. And absent evidence of age discrimination, Shahbabian's aiding and abetting age discrimination claims against TriHealth and Mayfield fail too.

\* \* \*

Shahbabian's remaining claims lack merit and warrant minimal comment.

### 2. Retaliation

Shahbabian claims that TriHealth retaliated against him because he refused to take a fitness examination in 2015, indicated that "he did not intend to retire at the insistence of TriHealth executives," and he generally complained about discrimination. But he has forfeited this claim on appeal because, aside from merely listing the alleged protected conduct, he makes no attempt to explain how this conduct caused any adverse action. *See Operating Engrs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617, 621 n.1 (6th Cir. 2022) ("Issues adverted to in a perfunctory manner" are forfeited.), *cert. denied*, No. 22-432, 2023 WL 2123751 (U.S. Feb. 21, 2023)).

### 3. Declaration

Shahbabian's attempt to file a supplemental declaration seven months after summary judgment was briefed was rightly rejected by the district court as untimely and not probative of age discrimination. No abuse of discretion occurred here. *See United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 862 (6th Cir. 2005).

### B.

On appeal, Shahbabian contends that his peers asked him to stop operating because they "regarded him" as disabled in violation of the ADA and state law. *See* 42 U.S.C. §§ 12102(1)(C), 12112(a).[2] These claims are different than the ones he alleged in his complaint, so they are forfeited. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th

---

[2] "[We] consider the ADA and state law claims simultaneously by looking to the cases and regulations that interpret the ADA." *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104 n.3 (6th Cir. 2008)

Cir. 2005). But even if these claims were properly raised, they would fail. As the district court aptly observed:

> An employer's perception that poor health is negatively impacting an employee's job performance is not tantamount to regarding that employee as disabled. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). . . . These principles are especially germane in light of the doctor's repeated run-ins with the [peer review committee] and the issuance of several of the most serious case weights a physician can receive at TriHealth.

*Shahbabian*, 2021 WL 3110073, at *13. The district court properly dismissed these claims.

## C.

Shahbabian wisely chooses *not* to challenge the district court's sound holding that TriHealth and Mayfield were immune from Shahbabian's breach of contract, common law fraud, tortious interference, and common law civil conspiracy claims under Ohio's peer review immunity statute. *See* Ohio Rev. Code. § 2305.251(A) ("No health care entity shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of a peer review committee of the health care entity."); *Shahbabian*, 2021 WL 3110073, at *5–7. Instead, he raises a new argument: TriHealth and Mayfield are not entitled to immunity because the peer review decisions were motivated by actual malice. We do not consider issues raised for the first time on appeal. *See United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 358 (6th Cir. 2022). And the argument would fail anyway because (1) Shahbabian never exhausted TriHealth's internal administrative remedies, which is an independent bar to his state-law claims, *see Nemazee v. Mt. Sinai Med. Ctr.*, 564 N.E.2d 477, 482 (Ohio 1990); and (2) nothing in this record shows actual malice on the part of any Defendant, *see Talwar v. Cath. Healthcare Partners*, 258 F. App'x 800, 809 (6th Cir. 2007). Shahbabian's theorizations about the peer review committee's motivation, as the district court remarked in the context of his age discrimination claim, "fail to unseat the peer review findings and resulting concerns as the chief reasons leading

up to the committee's conversation with him about suspending, at least temporarily, his surgeries." *Shahbabian*, 2021 WL 3110073, at \*9.

**D.**

Finally, Shahbabian challenges the enforceability of his employment contract and contends that TriHealth is only entitled to recoup an after-tax amount of the compensation it overpaid him, not the gross figure the district court ordered him to repay. Both arguments are also forfeited.

First, instead of making a reasoned explanation as to why his contract is unenforceable, he merely "incorporates the arguments" he made below into his opening appellate brief—a maneuver prohibited by the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 28(a)(8)(A); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003). Second, Shahbabian failed to raise his net-compensation argument in response to TriHealth's summary judgment motion, and he *confirmed* via joint stipulation that the prejudgment interest award was accurately calculated based on the pre-tax amount of his unearned compensation. *See Dorsa*, 33 F.4th at 358.

**III.**

The undisputed record reflects that TriHealth's actions were motivated by concern for— and responsibility to—its patients, not impermissible motives. The judgment of the district court is **AFFIRMED**.