NOT RECOMMENDED FOR PUBLICATION
File Name: 25b0001n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: ERIC L. MILLER,

*Debtor*.

MATTHEW LUCAS,

*Plaintiff-Appellant*,

No. 24-8015

*v*.

ERIC L. MILLER,

*Defendant-Appellee*.

Appeal from the United States Bankruptcy Court for the Southern District of Ohio at Dayton.
Nos. 22-bk-30047; 22-ap-03009—Guy R. Humphrey, Bankruptcy Judge.

Argued: March 6, 2025

Decided and Filed: July 11, 2025

Before: CROOM, GREGG, and MERRILL, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Joshua J. Brown, JOSH BROWN LAW LLC, Hilliard, Ohio, for Appellant. Richard E. West, RICHARD E. WEST CO., L.P.A., Springboro, Ohio, for Appellee. **ON BRIEF:** Joshua J. Brown, JOSH BROWN LAW LLC, Hilliard, Ohio, for Appellant. Richard E. West, RICHARD E. WEST CO., L.P.A., Springboro, Ohio, for Appellee.

_____

**OPINION**

_____

JOHN T. GREGG, Bankruptcy Appellate Panel Judge. This appeal addresses whether a debt owed by Eric L. Miller, the defendant-appellee (the "Debtor"), to Matthew Lucas, the

plaintiff-appellant ("Lucas," and together with the Debtor, the "Guarantors"), should be excepted from discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code.  Applying Rule 7056 of the Federal Rules of Bankruptcy Procedure (incorporating Rule 56 of the Federal Rules of Civil Procedure) to cross motions for summary judgment, the bankruptcy court entered an opinion and consolidated order in favor of the Debtor and against Lucas.[1]

For the reasons set forth below, we AFFIRM the decision of the bankruptcy court to grant the Debtor's motion for summary judgment.

## ISSUE ON APPEAL

In his statement filed in the bankruptcy court pursuant to Bankruptcy Rule 8009(a)(1), Lucas identified the following issue on appeal:

> Lucas is appealing *the decision of the Bankruptcy Court to grant summary judgment to [the Debtor]. . . .*  The issue in the case is whether a Debtor commits fraud when he signs an agreement to extend, renewing [sic] and refinance a debt, knowing that he intends to file bankruptcy on that debt.

(Statement of Issues on Appeal, No. 22-ap-03009, ECF No. 64 (emphasis added).)  Lucas similarly stated in his appeal brief pursuant to Bankruptcy Rule 8014(a)(5) that the sole issue is whether "the signing of a contract to extend, renew, and refinance credit, constitute [sic] a promise to pay that money, that another signatory reasonably may rely on?"  (Br. of Appellant Matthew Lucas ("Appellant's Br."), BAP ECF No. 14 at vii.)  During oral argument, however, Lucas advised the Panel that he was appealing both decisions in the bankruptcy court's consolidated order.

Lucas's two written statements of the issue under Bankruptcy Rules 8009(a)(1) and 8014(a)(5) indicate that only one decision in the bankruptcy court's consolidated order is the subject of this appeal - the decision to grant the Debtor's motion for summary judgment, not to deny Lucas's motion for summary judgment.  *See Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 449 (6th Cir. 2019) (failure to list an issue presented for review in the statement of

---

[1]The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq.*  Specific sections of the Bankruptcy Code are identified herein as "section ___."  The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq.* and are identified herein as "Bankruptcy Rule __."  References to the bankruptcy court's adversary proceeding docket are designated "ECF No. ___."  References to the BAP docket are designated as "BAP ECF No. ___."

issues under Fed. R. App. P. 28(a)(5) results in waiver of the argument (citations omitted)). Accordingly, the Panel shall limit its review to the bankruptcy court's decision to grant summary judgment to the Debtor.

The sole issue before the Panel can therefore be stated as whether the bankruptcy court erred when it determined that because no genuine issue of material fact existed, the Debtor was entitled to judgment as a matter of law regarding a debt of the kind set forth in section 523(a)(2)(A).

## JURISDICTION

The Panel has jurisdiction to decide this appeal. *See* 28 U.S.C. § 158. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel. S.D. Ohio Gen. Order No. 97-2 (Sept. 4, 1997). Neither party to this appeal elected to have it heard by the district court. 28 U.S.C. § 158(b), (c); *see* Fed. R. Bankr. P. 8005. "A bankruptcy court order granting summary judgment is a final order for purposes of appeal. 'A determination of dischargeability is [also] a final order.'" *WLP Cap., Inc. v. Tolliver* (*In re Tolliver*), No. 20-8021, 2021 WL 6061853, at *1 (B.A.P. 6th Cir. Dec. 20, 2021) (citations omitted).

## STANDARD OF REVIEW

"[A]n appeal of the bankruptcy court's grant of summary judgment . . . does not involve 'findings of fact' that are reviewed under a clearly erroneous standard." *Lyon v. S. Gas Co.* (*In re Wright Enters.*), 77 F. App'x 356, 363 (6th Cir. 2003) (citations omitted); *see* Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(a)(3)). Rather, an appellate court reviews a decision to grant summary judgment *de novo*, thereby deciding "an issue independently of, and without deference to," the bankruptcy court's determination. *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC* (*In re Brice Rd. Devs., LLC*), 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008) (citation omitted).

"Granting summary judgment is appropriate '[w]here the moving party has carried its burden of showing that the pleadings . . . in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.'" *Church Joint Venture, L.P. v. Blasingame* (*In re Blasingame*), 986 F.3d 633, 638 (6th Cir. 2021) (citations omitted). "That

means that, in most cases, evidence offered by the nonmovant must be accepted as true and that credibility judgments and weighing of the evidence are improper." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citation omitted).

## BACKGROUND

The Guarantors were lifelong friends who formed Collegiate E-Bike, Inc. ("CEB"), an Ohio corporation engaged in the sale of electric bikes and scooters. In 2007, Fifth Third Bank ("Fifth Third") made a loan to CEB and Innovative Designs, Inc. ("Innovative," and together with CEB, the "Borrowers") pursuant to the terms of a certain promissory note in the approximate amount of $100,000. The Guarantors unconditionally guaranteed repayment of any amounts due under the note.

The Borrowers were subsequently unable to satisfy their obligations to Fifth Third, who at some point sold and assigned its rights under the loan documents to TBF Financial, LLC ("TBF").[2] An Ohio state court later found the Borrowers and the Guarantors to be jointly and severally liable to TBF as evidenced by a cognovit judgment.

Confronted with TBF's attempts to enforce the judgment,[3] the Guarantors retained Jeremiah Heck ("Heck") to provide them with legal representation. Heck expressly advised the Guarantors that "they were both jointly and severally liable, meaning that they were both liable for potentially 100 percent of the debt." (Tr. of Dep. of Jeremiah Heck ("Heck Dep."), ECF No. 26-1 at 6.) Presciently, Heck not only required the Guarantors to waive in writing any conflict of interest related to their mutual dispute with TBF, but he also informed them that he could not represent either one of them adversely to the other.

With Heck's assistance, the Guarantors reached a settlement with TBF.[4] Pursuant to the terms of an agreement executed in April 2021 (the "Settlement Agreement"), the Guarantors were

---

[2]CEB ceased operations in 2007 or 2008. It is unclear what happened to Innovative, a corporation that was wholly-owned by Lucas.

[3]TBF exercised collection remedies against Lucas, who contested such action in Florida state court.

[4]The Settlement Agreement does not address the Borrowers in any way.

required to make payments to TBF in the aggregate amount of $80,000 over a period of two years. The Settlement Agreement included an Ohio choice of law provision as well as the following merger and integration clause:

> This Agreement constitutes the entire agreement among the parties and supersedes any and all prior or contemporaneous oral or written communications with respect to the subject matter hereof, all of which are merged herein. This Agreement may not be modified, amended, or in any way altered except by an instrument in writing, signed by an authorized representative of each party hereto. Each party acknowledges that they are not entering into this Agreement on the basis of any statement, warranty, representation or promise not expressly contained herein.

(Ex. A, Def.'s Am. Mot. for Summ. J., ECF No. 49 at 14.)

At the conclusion of the two-year period, Lucas had paid the entire settlement amount to TBF without any assistance from the Debtor. Lucas thereafter sought to recover half of the settlement amount from the Debtor by commencing a civil action for contribution in Ohio state court.

While the state court action was still in its infancy, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On schedule E/F, the Debtor listed a non-contingent, liquidated, and undisputed debt in the amount of $90,000 owed to Lucas as a result of the cognovit judgment.

Lucas filed a complaint seeking to have the debt that the Debtor owed to him under various theories of applicable non-bankruptcy law excepted from discharge under section 523(a)(2)(A).[5] After Lucas filed an amended complaint and the Debtor answered, the parties filed cross motions for summary judgment and responses, as amended.

The Debtor argued in his motion that under no circumstances could Lucas establish that (i) the Debtor made a material misrepresentation to Lucas regarding the Debtor's payment of the settlement amount, (ii) Lucas had any grounds for justifiable reliance, or (iii) Lucas sustained any

---

[5]Lucas attached to the complaint an affidavit from himself. The affidavit provides a summary of the facts giving rise to the debt owed by the Borrowers and the Guarantors to Fifth Third and, after assignment, TBF. It does not, however, provide any testimony regarding an alleged material misrepresentation from the Debtor or reliance by Lucas.

damages. *See* Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)(1)(B)). The Debtor stressed, among other things, that he repeatedly informed Heck that he would be unable to make any settlement payments due to his lack of financial means, a fact Heck communicated to Lucas. The Debtor did not file an affidavit or declaration in support of his motion for summary judgment and instead relied on the Settlement Agreement and transcripts from the depositions of Lucas and Heck for evidentiary support. *See* Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)(1)(A)).

Lucas responded to the Debtor's motion for summary judgment by putting forth a different interpretation of the Settlement Agreement. He asserted that the Debtor never explicitly informed him that the Debtor had no ability to contribute monetarily to the settlement. According to Lucas, the Debtor's "signing of the Settlement Agreement contract was a 'representation' of his assent to abide by the terms of the contract he signed – i.e., to be liable to pay the debt and his contribution to Lucas." (Pl.'s Mem. in Resp. to Def.'s First Am. Mot. for Summ. J., ECF No. 50 at 4.) Lucas argued that because the terms of the Settlement Agreement were unambiguous, it would be inappropriate to consider parol evidence in the form of the two deposition transcripts attached to the Debtor's motion for summary judgment.[6] Lucas thus maintained that he justifiably relied on the Settlement Agreement itself as a representation from the Debtor that he would be responsible for and pay one half of the settlement amount due to TBF. Lucas did not use an affidavit or declaration to oppose the Debtor's motion for summary judgment.

In a well-reasoned written decision, the bankruptcy court determined that because no genuine issue of material fact existed, the Debtor was entitled to judgment as a matter of law, while, conversely, Lucas was not. The bankruptcy court recognized that although Lucas held a valid, unliquidated prepetition claim for contribution against the Debtor, the record did not contain

---

[6]Lucas does not contend that the bankruptcy court relied on evidence that was inadmissible under the Federal Rules of Evidence. Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)(2)); Fed. R. Evid. 101 *et seq.*; *cf. Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 455 (6th Cir. 2005) (the prohibition on the use of parol evidence is a substantive doctrine, not a doctrine founded in the admissibility of evidence (citing *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000))).

any evidence suggesting that the Debtor ever made a representation to Lucas regarding payment of any portion of the settlement amount.**7**

Further, the bankruptcy court explained, the evidence demonstrated "that at the time the Settlement was entered into, [the Debtor] unequivocally stated multiple times that he could not contribute to the Settlement payments." (Decision (1) Den. Pl.'s Mot. for Summ. J. & (2) Granting Def.'s Am. Mot. for Summ. J. ("Op."), ECF No. 55 at 19.) Along those lines, the bankruptcy court emphasized that "the evidence does not support any form of justifiable reliance by Lucas on [the Debtor's] part in the Settlement." (*Id.* at 21.) Concluding from the record before it that Lucas could never satisfy at least two of the *prima facie* elements of a claim under section 523(a)(2)(A), the bankruptcy court granted summary judgment in favor of the Debtor and denied summary judgment to Lucas. *See* Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)(1)(B)).

One day after the bankruptcy court issued its written opinion and related order, Lucas filed a notice of appeal. Under the heading "Why the Trial Court is wrong" in his appeal brief, Lucas urges the Panel to conclude that the bankruptcy court erred for the following reasons:

> i.   [The Debtor] planned to discharge the debt he extended, renewed, and refinanced in the Settlement Agreement
>
> ii.  [The Debtor] committed himself to paying the debt he extended, renewed, and refinanced in the Settlement Agreement
>
> iii. Parole evidence cannot be used to vary or contradict the Settlement Agreement [the Debtor] signed
>
> iv.  Parole evidence shows the Trial Court imposed [the] improper standard
>
> v.   Lucas justifiably relied on [the Debtor's] representations
>
> vi.  Non-dischargeability refers to future "conduct" not acquisition of a debt
>
> vii. Lucas established "false pretenses" as well

(Appellant's Br. at 7-18.) Largely paraphrasing the bankruptcy court's opinion, the Debtor primarily argues in his appeal brief that the bankruptcy court properly determined that no genuine

---

**7**The Debtor and Lucas stipulated that in the event the debt was determined to be non-dischargeable, it would be in the amount of $40,000.

issue of material fact existed regarding the Debtor's lack of a fraudulent representation under section 523(a)(2)(A).

The Panel held oral argument on March 6, 2025.  At the conclusion of oral argument, the matter was submitted for decision.

## DISCUSSION

"The Bankruptcy Code strikes a balance between the interests of insolvent debtors and their creditors." *Bartenwerfer v. Buckley*, 598 U.S. 69, 72, 143 S. Ct. 665, 670 (2023); *see Andrews v. Mich. Unemployment Ins. Agency*, 891 F.3d 245, 249-50 (6th Cir. 2018).  To that end, chapter 13 debtors are allowed to discharge prepetition debts, with limited exceptions.  11 U.S.C. § 1328(a).  One of those exceptions is "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud[.]"  11 U.S.C. § 523(a)(2)(A); *see Andrews*, 891 F.3d at 249.

Courts have "historically construed the terms in § 523(a)(2)(A) to contain the elements that the common law has defined them to include." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360, 136 S. Ct. 1581, 1586 (2016) (citation omitted).  "A false representation has been defined as an expressed misrepresentation." *Jennings v. Bodrick* (*In re Bodrick*), 509 B.R. 843, 855 (Bankr. S.D. Ohio 2014) (quotation and citation omitted); *see First Citizens Nat'l Bank of Upper Sandusky v. Mann* (*In re Mann*), 646 B.R. 444, 455 (Bankr. N.D. Ohio 2022).  "In contrast, false pretenses involve 'an implied representation or conduct that is intended to create and foster a false impression.'" *Bodrick*, 509 B.R. at 855 (citation omitted); *see Mann*, 646 B.R. at 455.

To exclude a debt from discharge under section 523(a)(2)(A), the Sixth Circuit Court of Appeals has held that a creditor must prove the following four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Nehasil v. Grenier* (*In re Grenier*), 458 Fed. App'x 436, 438 (6th Cir. 2012) (citing *Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998)); *cf.*

*Husky Int'l Elecs.*, 578 U.S. at 360-62 (actual fraud, a broader concept, does not require misrepresentation and justifiable reliance in certain contexts).**[8]**

## A.    *False Representation*

Lucas contends that the Debtor's execution of the Settlement Agreement itself serves as a representation to Lucas that the Debtor would pay his proportion of the settlement amount.  He therefore posits that the bankruptcy court erred by considering the deposition transcripts of Lucas and Heck, both of which allegedly constitute inadmissible parol evidence.  According to Lucas, if the bankruptcy court had confined its review to the four corners of the Settlement Agreement, Lucas would have either demonstrated a genuine issue of material fact or, without expressly saying so, been entitled to summary judgment as the non-moving party under Bankruptcy Rule 7056 (incorporating Fed. R. Civ. P. 56(f)(1)).

### 1.    *Express Terms of the Settlement Agreement*

In his appeal brief, Lucas states that the Debtor made a representation to Lucas merely by signing the Settlement Agreement:

> [The Debtor's] signature upon the Settlement Agreement is an express, unequivocal, unambiguous commitment to Lucas to repay his legally-required contribution of the Settlement Amount.  The Trial Court characterizes incorrectly that this was an "implicit" promise on [the Debtor's] part. . . .  To the contrary, the plain language in the four-corners of the Settlement Agreement establishes an explicit, written contract to pay money.  The Settlement Agreement is unambiguous that [the Debtor] and Lucas are jointly and severally liable – under Ohio law, that entitles Lucas to contribution.

(Appellant's Br. at 16.)

---

**[8]**The bankruptcy court determined that Lucas did not assert a form of actual fraud that excludes the elements of misrepresentation and justifiable reliance.  Lucas does not contest such determination as part of this appeal.

The bankruptcy court determined that Lucas had a right of contribution from the Debtor under Ohio law.  Lucas tries to take contribution a step further by arguing that when the Debtor executed the Settlement Agreement, *he expressly represented to Lucas* that he would pay one half of the amount due to TBF or even repay Lucas at a later date.[9]  However, the Settlement Agreement says no such thing, instead staying silent with respect to the Guarantors' obligations to one another.  Indeed, the Settlement Agreement required the Guarantors to *jointly pay the settlement amount to TBF* within a certain period of time.  It did not apportion liability between Lucas and the Debtor or even ascribe individual payment obligations between them.

Relatedly, the Settlement Agreement provided that in the event the entire amount due thereunder was not paid in full, the Guarantors' joint liability would revert to the amount that otherwise would have been due under the cognovit judgment.  The Guarantors, defined as "Defendants" throughout the Settlement Agreement, were collectively responsible for ensuring that all obligations *to TBF* were satisfied, including with respect to the dismissal of all pending litigation and related appeals.  At no point does the Settlement Agreement require Lucas or the Debtor to take any action *vis a vis* one another or, for that matter, even express a single promise from the Debtor to Lucas (or vice versa).  Rather, Lucas and the Debtor were treated as one at all times under the Settlement Agreement.

We conclude that the bankruptcy court committed no error when it determined that the Settlement Agreement did not contain any express representation that the Debtor made to Lucas. *See* Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)(1), (f)(1)).  At best, the Settlement Agreement left the door open for Lucas and the Debtor to support their respective arguments by relying on evidence other than the Settlement Agreement.

---

[9]Lucas has not directed the Panel to any Ohio authority standing for the proposition that the mere execution of an agreement giving rise to a contribution claim somehow constitutes fraud as a matter of law when one co-obligor subsequently fails to pay some portion of the amount due under the agreement.  And even if it did, the issue is not whether a fraud has been committed under Ohio law; it is whether the Debtor owes a debt to Lucas that is non-dischargeable as a result of false pretenses or a false representation under federal law, namely section 523(a)(2)(A). *Grogan v. Garner*, 498 U.S. 279, 283-84, 111 S. Ct. 654, 657-58 (1991).

**2.       *Consideration of Parol Evidence***

With that in mind, we turn to extrinsic evidence. Pointing to the merger and integration clause in the Settlement Agreement, Lucas contends that the bankruptcy court erred when it relied on the deposition testimony of Heck and Lucas himself.[10] Lucas argues that the parol evidence rule should have foreclosed the bankruptcy court from considering anything other than the four corners of the Settlement Agreement. We disagree.

As Lucas recognizes in his appeal brief, "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Ed Schory & Sons, Inc. v. Francis*, 662 N.E.2d 1074, 1080 (Ohio 1996) (quotation and citation omitted). Under Ohio law, "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish*, 734 N.E.2d at 788 (citation omitted); *see Glazer*, 394 F.3d at 455 (applying Ohio law); *Lewis v. Danzig*, 42 F. App'x 709, 711 n.1 (6th Cir. 2002) (parol evidence rule under federal common law is identical to that under Ohio law (citation omitted)). Nonetheless, a court may consider parol evidence when it goes "to the making of the contract, not to a provision of that contract." *Glazer*, 394 F.3d at 455.

Again, Lucas's primary argument is that the Debtor committed fraud by merely executing the Settlement Agreement. And for reasons already discussed, the Settlement Agreement is silent with respect to the obligations of Lucas and the Debtor between one another. *See supra* at p. 10. In other words, the Settlement Agreement, standing alone, does not definitively answer the question. We therefore conclude that the bankruptcy court properly looked beyond the four

---

[10]Lucas's end game is unclear. The Settlement Agreement contains no express representation, meaning that Lucas (not the Debtor) would have needed to rely on parol evidence at trial. After all, it would have been Lucas's burden to prove all *prima facie* elements of a claim under section 523(a)(2)(A) by a preponderance of the evidence. *Grogan*, 498 U.S. at 291.

corners of the Settlement Agreement to the depositions of Heck and Lucas in order to determine whether the Debtor ever made a material misrepresentation to Lucas.**[11]**

### 3.    *Material Misrepresentation*

Misrepresentations are considered "material" under section 523(a) when they "are 'substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision.'" *Fuller v. Givens* (*In re Givens*), 634 B.R. 755, 761 (Bankr. E.D. Tenn. 2021) (citations omitted).  "[T]he test for materiality is not whether the [creditor] *actually* relied on the false statement, but whether the statement was *capable of influencing*, or had a natural tendency to influence, the [creditor]'s decision."  *Id.* at 762 (emphasis in original) (quoting *United States v. Keefer*, 799 F.2d 1115, 1127 (6th Cir. 1986)).  "On the other hand, '[a] misrepresentation is not material if the creditor knows it is false or possesses information sufficient to call the representation into question[.]'"  *Haney v. Copeland* (*In re Copeland*), 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003) (citation omitted).

The bankruptcy court determined that no genuine issue of material fact existed as to whether the Debtor made a material misrepresentation to Lucas by explaining that:

> [T]here is a distinct lack of evidence to suggest that [the Debtor] ever made an express commitment to Lucas to repay any portion of the Settlement amount.  To the contrary, the evidence reflects that at the time the Settlement was entered into, [the Debtor] unequivocally stated multiple times that he could not contribute to the Settlement payments.

(Op. at 19.)

The Panel's review of the record on appeal does not reveal anything to the contrary, nor does Lucas direct us to any evidence to support his position.  Lucas's own deposition demonstrates that the Debtor never promised or made any representations regarding repayment to Lucas.  Lucas

---

**[11]**Moreover, although not addressed in either party's appeal brief, we note that fraud itself is an exception to the parol evidence rule.  *See, e.g.*, *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 756 F.2d 443, 447 & n.2 (6th Cir. 1985) (applying Ohio law); *Galmish*, 734 N.E.2d at 789 (parol evidence rule "was never intended . . . [to] be used as a shield to prevent proof of fraud[.]" (citation omitted)).

repeatedly confirmed that he never communicated with the Debtor regarding the Debtor's promise to pay a portion of the settlement amount.

For purposes of illustration, when Lucas was asked whether he had any conversations with the Debtor about paying the amount owed under the Settlement Agreement, Lucas stated:

> No, we did not have any conversations then because he wouldn't answer his phone. He wouldn't answer emails. He hid.

(Tr. of Dep. of Pl. ("Lucas Dep."), ECF No. 25-1 at 30.) Relatedly, when Lucas was asked about conversations that occurred within the one year prior to the settlement, Lucas responded:

> [The Debtor] never talked to me about how he was going to pay, no. He never said, "I'm going to pay in cash. I'm going to pay with a check." He never said that. He never told me that he was going to stiff me with this whole bill.

(*Id.* at 40.) Continuing, when Lucas was asked to identify a "single conversation" that he had with the Debtor regarding the payment of the settlement amount, Lucas admitted, "[i]t was never a topic. It was more of 'how are we going to settle it?'" (*Id.* at 38.) Finally, when Lucas was yet again asked if the Debtor ever said that he would or wouldn't pay, Lucas's pointed response was that "he never promised—yes he never said—*he never promised me that he would pay*." (*Id.* at 60 (emphasis added).)

Heck's communications with Lucas further support the conclusion that the Debtor made no material misrepresentation to Lucas. Recall that at the outset of his relationship with Lucas and the Debtor, Heck advised each of them that "they were both liable for potentially 100 percent of the debt." (Heck Dep. at 6.) Lucas was asked if, after the representation commenced, Heck ever told Lucas that the Debtor would pay a portion of the settlement amount. Lucas responded, "No." (Lucas Dep. at 42.) Similarly, when asked whether Heck ever told him that the Debtor "was going to pay anything towards the settlement," Lucas again responded, "No." (*Id.*)

In light of the significant deposition testimony, it is clear that the Debtor never made a material misrepresentation to Lucas regarding any payments under the Settlement Agreement. *See supra* at pp. 10-11. Attempting to demonstrate that the bankruptcy court overlooked a genuine issue of material fact, Lucas needed to identify something in the record that evidenced a material

misrepresentation.  *See* Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(e)).  He failed to do so.**[12]**

In the end, the Settlement Agreement contains no express representation from the Debtor to Lucas regarding payment of his proportionate share of the settlement amount.  Accordingly, it was appropriate for the bankruptcy court to consider the depositions of Heck and Lucas, which demonstrate that the Debtor never told Lucas (directly or through Heck) that the Debtor would satisfy any portion of the amount owed to TBF or even repay Lucas.  We therefore conclude that the bankruptcy court did not err when it determined that no genuine issue of material fact existed regarding the Debtor's lack of a material misrepresentation.

### 4.    *Justifiable Reliance*

Even if Lucas could somehow demonstrate a genuine issue of material fact as to the Debtor's alleged material misrepresentation, the bankruptcy court determined that Lucas could never demonstrate justifiable reliance.  *See Field v. Mans*, 516 U.S. 59, 74-75, 116 S. Ct. 437, 446 (1995) (citation omitted).  As the Panel has previously stated in connection with another appeal: "'justifiable reliance' is a subjective standard that takes into account a variety of factors, such as 'special knowledge, experience, and competence[.]'" *Tolliver*, 2021 WL 6061853, at *17 (citation omitted).    "Therefore, '[i]n considering justifiable reliance, the court may consider the sophistication of the creditor and the parties' past relationship.'" *Id.* (citation omitted).

Lucas argues that the bankruptcy court, in effect, imposed an undue burden of investigation on him.  We disagree.  Lucas's deposition establishes that he was previously on notice that he could not rely on the Debtor to pay any portion of the settlement amount.  Specifically, Lucas was plainly aware that the Debtor's position was that he had little to no means by which to pay TBF and had previously contemplated bankruptcy.

During his deposition Lucas was asked *if Heck* ever told him that the Debtor was contemplating bankruptcy, to which Lucas answered, "No."  (Lucas Dep. at 42; *see also* Heck Dep. at 7-8.)  However, Lucas admitted that, starting as early as 2016, *the Debtor* had mentioned

---

**[12]**Again, Lucas did not file an affidavit or declaration that created any genuine issue of material fact.  Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)(4)).

to Lucas the possibility of filing for bankruptcy to deal with his liability to TBF. (Lucas Dep. at 42-44, 58-59.) Lucas was asked to confirm whether he knew, and was aware, that the Debtor had considered bankruptcy as an option. (*Id.* at 58-59.) Lucas responded, "Yes[.]" (*Id.* at 59.)

Just as importantly, when asked if the Debtor ever told Lucas he was going to pay any part of the debt, Lucas responded that the Debtor "never used the words when he was going to do it because he doesn't – he said he didn't have it." (*Id.* at 50.) Lucas continued, reiterating what the Debtor had previously told Lucas: "[The Debtor] said, 'I'm just not sure how I'm going to pay' – 'I'm just not sure where I can find all the money[.]'" (*Id.* at 50-51.)

During Heck's deposition, this same topic was raised. Heck stated that "everybody knew that [the Debtor] was not going to be able to contribute to the settlement at the time," because "[h]e just simply didn't have the funds[.]" (Heck Dep. at 9.) Heck was asked about an email he sent to Lucas wherein Heck advised him that the Debtor's execution of the Settlement Agreement did not mean the Debtor would contribute to the settlement amount. (*Id.* at 9.) Heck explained that this was the case because the Debtor "definitely indicated he could not pitch in on the settlement." (*Id.* at 9-10.) According to Heck, the Debtor "just didn't have the funds to pitch in on the settlement at the time," a fact Heck said he communicated to Lucas before the execution of the Settlement Agreement. (*Id.* at 10.)

When all is said and done, Lucas was clearly on notice that the Debtor might not pay any portion of the settlement. *See Tolliver*, 2021 WL 6061853, at *17. True, Lucas was not required to closely scrutinize the circumstances. But he also could not "shut his eyes" to factors that would negate any justifiable reliance. *Lentz v. Spadoni* (*In re Spadoni*), 316 F.3d 56, 59 (1st Cir. 2003); *see Tolliver*, 2021 WL 6061853, at *17. Because Lucas was aware of the Debtor's position with respect to repayment of the debt prior to the execution of the Settlement Agreement, the bankruptcy court correctly determined that any reliance by Lucas on the Settlement Agreement was not justifiable.

### B.     *False Pretenses*

Covering three sentences at the end of his appeal brief, Lucas raises, but does not seriously pursue, false pretenses. Lucas comments, "[h]ere, there is no need for the Court to explore whether

[the Debtor] implied that he would extend, renew, or refinance credit through the Settlement Agreement.  [The Debtor] did this explicitly."  (Appellant's Br. at 18.)  We interpret Lucas's statement as an abandonment of any argument on appeal regarding false pretenses. *See, e.g.*, *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 843 (6th Cir. 2024) (citations omitted), *cert. denied*, 144 S. Ct. 2689 (2024).  We therefore need not consider it further.

## CONCLUSION

Lucas has every right to be disappointed in the Debtor, his one-time childhood friend who contributed nothing to the settlement with TBF.  However, the Debtor's cavalier treatment of Lucas and the joint debt they owed to TBF does not by itself equate to a fraudulent representation under section 523(a)(2)(A).

For the foregoing reasons, we AFFIRM.